**J. M. FALKNER, Commissioner of Banking of Texas et al., Appellants,**

v.

**ALLIED FINANCE COMPANY OF BAY CITY et al., Appellees.**

No. 11326.

Court of Civil Appeals of Texas.

Austin.

July 21, 1965.

Rehearing Denied Oct. 6, 1965.

Waggoner Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., Stanton Stone, T. B. Wright, Executive Asst. Attys. Gen., Paul Phy, Joe R. Long, Ralph R. Rash, Asst. Attys. Gen., Austin, Locke, Purnell, Boren, Laney & Neely, J. L. Shook, John D. Crawford, Dallas, for appellants.

Locke, Purnell, Boren, Laney & Neely, J. L. Shook, John D. Crawford, Dallas, for appellees and cross-appellants.

HUGHES, Justice.

Allied Finance Company of Bay City and forty-three other Allied Finance Companies, all Texas Corporations, sued J. M. Falkner, Commissioner of Banking of Texas, H. L. Bengtson, Deputy Commissioner of Banking, R. S. Calvert, Comptroller of Public Accounts of Texas, Jesse James and Waggoner Carr, Treasurer and Attorney General of Texas, respectively, in their official capacities, for injunctive relief and a declaratory judgment based on their primary contention that they are not subject to supervision or regulation under Art. 1524a, Vernon's Ann.Tex.Civ.St.

To this petition the officials sued filed a plea in abatement to the effect that no cause of action was alleged against them and that it constituted a suit against the State filed without legislative permission. These same officials filed an answer consisting principally of a general denial and a cross-action on behalf of the State against all corporations bringing the suit alleging that they were all Texas Corporations and subject to the provisions of Art. 1524a, V.T.C.S. and that they had not paid the filing fees required by Section 4 of such

Article. The State asked judgment for these fees and for penalties as therein provided.

Trial was nonjury and resulted in a judgment in behalf of all Allied Corporations bringing suit for the relief sought except the four Allied Finance Corporations (Baton Rouge, LaFayette, Lake Charles, Shreveport) who were not licensees under Art. 6165b, Texas Regulatory Loan Act. As to these corporations, injunctive relief was denied and judgment was rendered against each of them for $200.00 for failure to file statement of condition and pay the statutory filing fee on or before April 1, 1964, as required by Sec. 4, Art. 1524a.

This judgment also dismissed from the suit all officials sued except the Commissioner and Deputy Commissioner of Banking.

Appeals from this judgment have been perfected by the four Allied Corporations against whom judgments were rendered and the two Banking Commissioners on behalf of the State.

The material facts are undisputed.

All of the Allied Corporations, except Bryan, Fairmount, Temple and Arlington, were organized on August 7, 1963. Bryan was organized November 20, 1963, Fairmount and Temple December 17, 1963, and Arlington on January 14, 1964.[1]

All Allied Corporations except the four Louisiana named Corporations are licensed under the Regulatory Loan Act.

All forty-four Allied Corporations have identical purpose clauses in their charters. This purpose clause is as follows:

"ARTICLE THREE

The purposes for which the corporation is organized are:

To obtain one or more licenses and operate under The Texas Regulatory Loan Act, Chapter 205, Acts 1963, 58th Legislature, Vernon's Ann.Civ.Stats. Art. 6165b;

To accumulate and lend money without banking or discounting privileges;

To purchase, sell and deal in notes, bonds and securities;

To subscribe for, purchase, invest in, hold, own, assign, pledge and otherwise deal in and dispose of shares of capital stocks, bonds, mortgages, debentures, notes and other securities or obligations, contracts and evidences of indebtedness of foreign or domestic corporations;

To borrow money or issue notes, bonds, debentures and commercial paper for carrying out any or all purposes above enumerated;

To purchase, hold or sell installment obligations and contracts of every kind;

To obtain licenses and permits where appropriate and permitted by law to carry on any and all of such purposes; and

To do such things as may be necessary or convenient in carrying out any and all of the foregoing purposes."

Art. 1524a was last amended in 1959. We quote the following portions of Sections 1, 2, 4, 5 and 7 of such Article which indicate its purport and scope:

"Art. 1524a. Corporations for loaning money and dealing in bonds and securities without banking and discounting privileges; regulations

Application; acting as agent; capital

Sec. 1. This Act shall embrace corporations heretofore created and hereafter created having for their purpose or purposes any or all of the powers now authorized in Subdivisions 48, 49

---

1. The State concedes that Arlington owed no fees under Sec. 4, Art. 1524a when this suit was filed.

or 50 of Article 1302, Revised Civil Statutes of Texas, 1925, and heretofore or hereafter created having in whole or in part any purpose or purposes now authorized in Chapter 275, Senate Bill Number 232 of the General and Special Laws of the Regular· Session of the 40th Legislature.

\*     \*     \*     \*     \*     \*

Sec. 2.   The Banking Commissioner of Texas shall examine or cause to be examined such corporations annually or oftener if he deems it necessary.   Said corporation shall pay the actual traveling expenses, hotel bills, and all other actual expense incident to such examination and a fee not exceeding Twenty-five Dollars ($25) per day per person engaged in such examination. If such corporation had not sold in Texas its bonds, notes, certificates, debentures, or other obligations and does not offer for sale or sell in Texas its bonds, notes, certificates, debentures, or other obligations, the Banking Commissioner of Texas, in lieu of an examination, shall accept a financial statement màde on such form and containing such information as he desires.

\*     \*     \*     \*     \*     \*

Sec. 4.   Such corporation that has sold in Texas its bonds, notes, certificates, debentures or other obligations, or is offering for sale in Texas its bonds, notes, certificates, debentures or other obligations, shall publish in some newspaper of general circulation in the county where it has its principal place of business, on or before the 1st day of February each year, a statement of its condition on the previous 31st day of December, in such form as may be required by the Banking Commissioner of Texas, showing under oath its assets and liabilities, and shall file a copy of such statement with the Banking Commissioner of Texas together with a fee of Twenty-five ($25.00) Dollars for filing.

\*     \*     \*     \*     \*     \*

Such corporation that has not sold in Texas its bonds, notes, certificates, debentures or other obligations, and does not offer for sale or sell in Texas its bonds, notes, certificates, debentures or other obligations, shall file with the Banking Commissioner of Texas on or before the 1st day of February of each year a statement of its condition on the previous 31st day of December, in such form as may be required by the Banking Commissioner of Texas, showing under oath its assets and liabilities, together with a fee of Twenty-five ($25.00) Dollars for filing; which report, when so filed, shall not be open to the public but shall be for the information of the Banking Commissioner and his employees.

\*     \*     \*     \*     \*     \*

Sec. 5.   If any such corporation shall fail to comply with Section 4 of this Act in the manner and within the time required, such failure shall subject such corporation to a penalty of not less than Two Hundred ($200.00) Dollars nor more than One Thousand ($1,000.00) Dollars, which shall be collected at the suit of the Attorney General if not paid within thirty (30) days after February first of each year.

\*     \*     \*     \*     \*     \*

Sec. 7.   All bonds, notes, certificates, debentures, or other obligations sold in Texas by any corporation affected by a provision of this Act shall be secured by securities of the reasonable market value, equaling at least at all times the face value of such bonds, notes, certificates, debentures, or other obligations. If such corporation sells in Texas, bonds, notes, certificates, debentures, or other obligations upon which it receives installment payments, such bonds, notes, certificates, debentures and other obligations shall be secured at all times by securities having the reasonable market value equal to the

withdrawal or cancellation value of such obligations outstanding. Said securities shall be placed in the hands of a corporation having trust powers approved by the Banking Commissioner of Texas as Trustee under a trust agreement, the terms of which shall be approved in writing by the Banking Commissioner of Texas, or at the option of any such corporation which sells in Texas, bonds, notes, certificates, debentures, or other obligations upon which it receives installment payments, such corporation may upon application to, and approval by, the Banking Commissioner of Texas deposit securities having a reasonable market value equal to the withdrawal or cancellation value of such obligations outstanding with the State Treasurer of Texas in lieu of such deposits with a Trustee as set forth hereinabove, provided that, in the event such deposit is made with the State Treasurer of Texas in lieu of such Trustee: (1) Such corporation shall file a certified statement of reserve liability and detailed list of securities so deposited, semi-annually with the Banking Commissioner of Texas, which certification shall be made by a Certified Public Accountant, who shall be approved by and be satisfactory to the Banking Commissioner. The Corporation shall pay a fee of Fifteen Dollars ($15) for filing each such statement. (2) Said securities shall be deposited with the State Treasurer under a trust agreement, the terms of which shall be approved by the Banking Commissioner."

Article 1302, V.A.C.S., stating the purposes for which private corporations might be formed, at the time of the enactment of Article 1524a, read in part as follows:

"48. To accumulate and lend money without banking or discounting privileges.

49. For any one or more of the following purposes: To accumulate and lend money, purchase, sell and deal in notes, bonds and securities, but without banking and discounting privileges; to act as trustee under any lawful express trust committed to them by contract and as agent for the performance of any lawful act. Acts 1919, p. 134.

50. To subscribe for, purchase, invest in, hold, own, assign, pledge and otherwise deal in and dispose of shares of capital stock, bonds, mortgages, debentures, notes and other securities, obligations, contracts and evidences of indebtedness of foreign or domestic corporations not competing with each other in the same line of business; provided the powers and authority herein conferred shall in no way affect any provisions of the anti-trust laws of this State." Acts 1921, p. 265.

Acts of 1927, 40th Leg., Chapter 275, p. 414 (codified as Art. 1303b, V.A.C.S.), referred to in Article 1524a, then provided in part as follows:

"Sec. 1. A private corporation may be formed for any one or more of the following purposes without banking or insurance privileges: to accumulate and loan money, to sell and deal in notes, bonds and securities; to act as trustee under any lawful express trust committed to it by contract, and as agent for the performance of any lawful act; to subscribe for, purchase, invest in, own, assign, pledge, and otherwise deal in, dispose of shares of capital stocks, bonds, mortgages, debentures, notes and other securities, obligations and contracts and evidences of indebtedness of foreign or domestic corporations not competing with each other in the same line of business; to borrow money or issue notes, bonds, debentures or commercial paper for the purpose of carrying out any or all purposes above enumerated. * * *"

It will be noted that every word of the second, third and fourth corporate purposes stated in appellees' charters appear in subdivisions 48, 49 and 50 of Article 1302 and in Article 1303b.

Arts. 1302 and 1303b were repealed in 1961, Acts. 57th, Leg.Reg.Sess., Ch. 229, p. 458. This repealing Act provides, in part:

"With the exception of Section 49 of Article 1302 and Article 1303b, Vernon's Civil Statutes of Texas, the repeal by this Act of any purpose clause shall not give rise to the inference that corporations may not hereafter be organized for the purpose so repealed."

The Texas Business Corporation Act, enacted in 1955, Arts. 1.01–11.01, inc., Vol. 3A, V.T.C.S., provides in Art. 9.15, in part, as follows:

"B. Except as provided in Section B of Article 9.16 of this Act, any special limitations, obligations, liabilities, and powers, applicable to a particular kind of corporation for which special provision is made by the laws of this State, including, (but not excluding other corporations) those corporations subject to supervision under Article 1524a of the Revised Civil Statutes of Texas, shall continue to be applicable to any such corporation, and this Act is not intended to repeal and does not repeal the statutory provisions providing for these special limitations, obligations, liabilities, and powers."

Art. 6165b, Texas Regulatory Loan Act, was enacted in 1963. It applies exclusively to loans of $1500.00 or less.

Sec. 16(a) of this Act provides:

"Sec. 16. (a) A licensee may conduct the business of making loans under this Act, within any offices, suite, room or place of business in which any other business is solicited or engaged in, or in association or conjunction with any other business, unless the commissioner shall find, after a hearing, that the conduct by the licensee of such other business in the particular licensed office has concealed evasions of this Act and shall order such licensee, in writing, to desist from such conduct in such office."

Sec. 29 of this Act reads:

"Sec. 29. Chapter 144, Acts of the 48th Legislature, Regular Session, 1943, compiled as Article 4646b, Vernon's Annotated Civil Statutes of Texas, and Articles 5069, 5071 and 5073, Revised Civil Statutes of Texas, 1925, where inconsistent with this Act shall not apply to licensees under this Act, nor shall the provisions of Chapter 165, Acts of the 42nd Legislature, Regular Session, 1931, as amended, compiled as Article 1524a, Vernon's Annotated Civil Statutes of Texas, apply to such licensee."

The title to this Act reads, in part, as follows:

"An Act to classify loans and lenders and provide for their regulation; stating legislative intent; providing a short title; defining terms; * * * prohibiting any person from engaging in the business of making loans with cash advances of One Thousand Five Hundred Dollars ($1,500) or less under certain conditions without first obtaining a license, and providing a penalty and loss of all principal and interest for violation thereof; * * * prescribing maximum rates of interest and other charges, according to the size of the loan, on loans of One Thousand Five Hundred Dollars ($1,500) or less, * * * providing that Chapter 144, Acts of the 48th Legislature, Regular Session, 1943, (compiled as Article 4646b, Vernon's Annotated Civil Statutes of Texas), Articles 5069, 5071 and 5073 of the Revised Civil Statutes of Texas, 1925, and Chapter 165, Acts of the 42nd Legislature, Regular Session, 1931, as amended, (compiled as Article 1524a, Vernon's Annotated Civil Stat-

utes of Texas), where inconsistent with this Act shall not apply to licensees under this Act;"

One of the grounds upon which certain Allied Corporations defend the judgment in their favor is that when they were organized in August 1963, Arts. 1302 and 1303b, supra, had been repealed and that Art. 1524a could not apply to corporations organized after such repeal. We do not agree.

We have set out the language of Sec. 1 of Art. 1524a, and, in our opinion, it plainly encompasses all corporations having or which may "hereafter" have the designated purpose clauses found in the statutes referred to regardless of the repeal of such statutes. It is clear from the authorities that Art. 1524a is, what has been denominated, a reference statute. The rule applicable to such statutes is stated in Quinlan v. Houston & T. C. Ry. Co., 89 Tex. 356, 34 S.W. 738, from which we quote:

"In the absence of any constitutional restriction, we are of opinion that one statute, by a proper reference to another, may incorporate in it the provisions of the former law, although the former may have expired, or may have been repealed. A law so referred to in another, and made a part of it, does not operate by its inherent force, but takes effect from the statute in which it is incorporated."

See also Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070, Western Casualty & Surety Company v. Young, 339 S.W.2d 277, Tex.Civ.App., Beaumont, writ ref.

In United States ex rel. Kessler v. Mercur Corporation, 83 F.2d 178, U.S.Cir.Ct. 2d Cir., cert. denied 299 U.S. 576, 57 S.Ct. 40, 81 L.Ed. 424, the Court stated the rule applicable here as follows:

"It is well settled that where a statute incorporates another, and the one incorporated is thereafter amended or repealed, the scope of the incorporating

statute remains intact and 'no subsequent legislation has ever been supposed to affect it.' "

Our holding that the repeal of these statutes (1302, 1303b) did not affect the operation of Art. 1524a is augmented by the quoted portion of the repealing Act, supra, to the effect that such repeal should not give rise to the inference that corporations may not thereafter be organized for the purposes so repealed.

Similar support is found in Art. 9.15, Sec. B of the Texas Business Corporation Act, supra, which by express reference to corporations subject to supervision under Art. 1524a carries forward and makes applicable to such corporations all "special limitations, obligations, liabilities, and powers * * * for which special provision is made by the laws of this State. * * *"

Thus, it appears to us, the Legislature has affirmatively continued in effect the supervisory authority expressed in Art. 1524a over corporations coming within its purview.

A more formidable and more difficult ground is presented by Allied Corporations holding licenses under the Texas Regulatory Loan Act for denying their amenability to supervision under Art. 1524a in their reliance upon the express provision of that Act that Art. 1524a shall not apply to licensees under the Act.

It is our opinion that this portion of Sec. 29, Art. 6165b, V.T.C.S., is invalid for the reason that the Title to the Texas Regulatory Loan Act[2] is, in this respect, misleading, deceptive, and is not in keeping with Art. 3, Sec. 35 of the Texas Constitution, Vernon's Ann.St., which reads:

"35. Subjects and titles of bills

Sec. 35. No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are

2. 58th Leg.Reg.Sess., Ch. 295, p. 550.

appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

■ The purpose of this provision of the Constitution is well stated by Justice Garwood in Shannon v. Rogers, 159 Tex. 29, 314 S.W.2d 810, from which case we quote:

"The constitutional provision is, of course, directed at pending legislation. Doeppenschmidt v. International & G. N. R. Co., 100 Tex. 532, 101 S.W. 1080, 1081. In so far as it deals with captions of bills, as distinguished from the matter of multiple subjects thereof, its object is to facilitate and protect the legislative process by affording legislators and other interested people a ready and reasonably accurate means of knowledge of the contents of bills without their having to read the full text.

■ The Constitution plainly assumes, however, that the entire caption will be read; and if such a reading necessarily discloses the bill to contain a particular provision, no more is required."

If one reads the title or caption of the Texas Regulatory Loan Act one will readily be made knowledgeable that the Act classifies loans of and lenders lending $1500.00 or less and, inter alia, that as to compliance with and subjection to the provisions of Art. 1524a that they "[W]here inconsistent with this Act shall not apply to licensees under this Act."

Yet, in the face of this plainly stated objective in the title, the body of the Act completely exempts licensees under the Act from the provisions of Art. 1524a. That this is a deceptive and misleading title is patent. That it has, in fact, caused confu-

sion is witnessed by the compilers of Vernon's Annotated Texas Civil Statutes when it is stated under Art. 1524a in the 1964 Supplement, "Inapplicability of article 1524a to licensees under the Texas Regulatory Loan Act *where inconsistent* with this Act, see Article 6165b, § 29." (Italics added)

If this Section (29) of the Regulatory Loan Act is valid in its exemption of licensees under it from the provisions of Art. 1524a, then such licensees having charter powers as these Allied Corporations have are not subject to statutory regulations by any State agency in their loan business involving loans in excess of $1500.00 and in their bond and securities business.

There is no evidence in this record that Allied Corporations do not make loans in excess of $1500.00, or that they have amended or abandoned their charter authority under which they may make loans in any amount, and buy and sell securities. In this regard, Mr. Francis A. Miskell, Regulatory Loan Commissioner of Texas, testified:

"Most of the people engaged in this type of lending, they are engaged in what we call multiple fields of lending. It is rare where you will find a lender who will restrict himself to fifteen hundred dollars. If he is in that business, he will make loans up to three, four, five thousand dollars. * * *"

Mr. Harry L. Bengtson, Deputy Banking Commissioner of Texas, testified regarding the enforcement procedures of the Banking Commissioner under Art. 1524a. This included investigation into the solvency and management of the corporations subject to the Act, the collateralization of their obligations, the filing of reports and payment of fees.

All of these beneficent and protective measures, the public would lose as to all licensees under the Regulatory Loan Act in large measure, if the judgment of the trial court is to be sustained in its construction of such Act. We invoke the wise pro-

vision of Art. 3, Sec. 35, of our Constitution to forestall this predicament.

In Rotner v. State, 122 Tex.Cr.R. 309, 55 S.W.2d 98, it was stated, quoting from one of its prior cases, "It has been held by the courts that when the express verbiage of such title limits and restricts the purpose of the bill, any attempt to legislate otherwise in such bill variant from the purpose prescribed, is in excess of legislative power, and that a law subject to this complaint is unconstitutional."

This is precisely what was done here. The body of the Act exceeds the restrictions and limitations placed upon the application of Art. 1524a in the title of the Act. To this extent constitutional legislative power was lacking.

There is an exhaustive opinion on this subject by Chief Justice Alexander in Gulf Ins. Co. v. James, 143 Tex. 424, 185 S.W. 2d 966. The Court there struck down an Act of the Legislature on the ground that the title was misleading and not sufficient to advise the Legislature and the public as to the subject of the Act. The Court quoted from Cooley, Constitutional Limitations (8th ed.) Vol. 1, p. 300, as follows, "But the title must be such as to reasonably apprise the public of the interests that are or may be affected by the statute."

We believe that the public was entitled to notice plainly stated in the title of this Act that it authorized Corporations dealing in securities and bonds and making loans in excess of $1500.00 to completely escape inspection and regulation by a State Agency by the simple expedient of acquiring a license under the Regulatory Loan Act if the Legislature so intended. The Title to this Act did not so state; in fact, it stated very close to the opposite.

It is our opinion that the variance between the title to the Regulatory Loan Act and the Act offends our Constitution, and, to the extent indicated, the Act is void.

■ The result of this decision is that the law to be applied in construing Art.

1524a and the Texas Regulatory Loan Act is the same as if the restrictive application of Art. 1524a as stated in the Title of the Regulatory Loan Act had been incorporated in the Act for the reason that such Act, being a later Act, would constitute an implied repeal of previous laws which were inconsistent with it. Statutes, 53 Tex.Jur. 2d, Sec. 101, p. 149.

■ Allied Corporations pointing to Sec. 16(a) of Art. 6165b, copied above, state that it demonstrates that the Legislature did not intend that licensees under the Act should be subjected to "two systems of regulations, reports and fees."

The logic of this contention is not clear to us. Surely, if one of the other businesses in which a licensee under the Act was engaged in the same office was the liquor business, it would hardly be contended that liquor licensing laws were inapplicable to such licensee. If Allied Corporations are subjected to two systems of regulations, it is because they engage in two businesses each of which is subject to regulation.

Sec. 16(a), in our opinion, relates solely to the physical location of a loan business established under the Act.

In the above discussion we have disposed of all points raised by the parties in their briefs except a point made by the four Allied Corporations with Louisiana names who appealed from the judgment against them for penalties to the effect that such judgment was without evidence to support it for the reason that it conclusively appears that the reports required to be filed by Art. 1524a were filed, and there was no evidence that they were not timely filed.

Mr. Bengtson testified:

"Q But you never did send the forms to any of these forty-four plaintiffs?

A No. Now, wait a minute; you said forty-four; those four in Louisiana, we did give you the forms on those.

Q Well, did they file the returns?

A Yes, sir, they did subsequently, and paid their twenty-five dollar filing fee.

Q So the four Louisiana ones did go ahead and comply and pay the filing fee?

A Yes, sir. There is still the question of penalty, though, for late filing."

No judgment was rendered for the $25.00 fees for filing annual reports, only a judgment for penalties for failure to timely file such reports.

It is our opinion that the testimony is sufficient to sustain a finding that the reports of these corporations were not timely filed. If we are in error in this holding, we would not reverse and render judgment, we would reverse and remand.

We affirm the judgment of the trial court insofar as it rendered judgment against the four appealing Allied Corporations.

We reverse the judgment of the trial court insofar as it granted injunctive relief, and we render judgment denying such relief.

We reverse the judgment insofar as it denied the State recovery of $25.00 filing fees, not paid as required by law, against all Allied Corporations except the four with Louisiana names who have paid such fees and Allied Arlington which owed no fee when this suit was filed, and we render judgment against each of such corporations for $25.00, plus 6% interest from this date.

We reverse the judgment of the trial court insofar as it declined to fix the amount of penalties required under Art. 1524a of those Allied Corporations against each of whom $25.00 judgments have been rendered by us in the preceding paragraph and remand this cause for such purpose.

We declare the law to be as stated herein.

Affirmed in part, reversed and rendered in part and in part reversed and remanded.