**CITY NATIONAL BANK OF AUSTIN,**
**Appellant,**

v.

**J. M. FALKNER et al., Appellees.**

**No. 11599.**

Court of Civil Appeals of Texas.

Austin.

May 1, 1968.

Rehearing Denied May 29, 1968.

Sneed, Vine, Wilkerson & Selman, Robert C. Sneed, Louis Scott Wilkerson, Austin, for appellant.

Crawford C. Martin, Atty. Gen., George M. Cowden, 1st Asst. Atty. Gen., A. J. Carubbi, Jr., Staff Legal Asst. Atty. Gen., Sam Kelley, Robert Flowers, C. Fielding Early, Asst. Attys. Gen., Austin, McGinnis, Loch-

ridge, Kilgore, Byfield, Hunter & Wilson, Joe M. Kilgore, James W. Wilson, Shannon H. Ratliff, Austin, for appellees.

HUGHES, Justice.

This is a declaratory judgment suit in which City National Bank of Austin, appellant, sought a declaration of law that it is within the power of the State Banking Board to grant or deny permission to the Texas State Bank to move its domicile and banking house from its present location in the City of Austin to another location, diagonally across the street from City National, in the City of Austin. The Board and Texas State were named defendants. City National also sought appropriate injunctive relief if the law was declared as requested.

Motion for summary judgment was made by the Board and Texas State Bank, and judgment was granted that appellant take nothing by its suit.

By Sec. 2, Ch. 673, S.B. 546, p. 1772, Acts of 60th Leg.Reg.Sess., 1967, Chapter III of the Texas Banking Code of 1943 as amended was amended, effective June 17, 1967, by adding a new section entitled Article 14. We copy all of Secs. 2, 3, 4, 5 and 6 of S.B. 546:[1]

"Sec. 2. Chapter III of the Texas Banking Code of 1943, as amended, is hereby amended by adding thereto a new Section immediately following Article 13a, to be entitled Article 14 which shall read as follows:

'Article 14.

'No state bank shall hereafter change its domicile without first having received approval for such change from the State Banking Board in the manner provided for the approval of an original application for a charter.'

Sec. 3. This Act shall have no application to any change of domicile of a state bank for which an application for

approval of such change was filed with the Federal Deposit Insurance Corporation prior to April 6, 1967.

Sec. 4. If any provision, Section, sentence, clause or part of this Act or the application thereof to any person or circumstance is held invalid, such holding shall not affect other provisions or applications of this Act which can be given effect without the invalid provision or application and to this end the provisions of this Act are declared to be severable.

Sec. 5. All laws or parts of laws which are in conflict with this Act are hereby repealed or modified to the extent of such conflict only.

Sec. 6. The fact, that there is no provision in the present banking laws requiring approval of the State Banking Board of changes of domicile of state banks, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three separate days in each House be suspended, and said Rule is hereby suspended; and this Act shall take effect and be in force from and after its passage, and it is so enacted."

The caption to S.B. 546, Chapter 673, supra, reads:

"An Act amending Chapter III, Article 12, being a part of the Texas Banking Code of 1943, the same being Chapter 97, Acts of the 48th Legislature, Regular Session, 1943; and adding a new Section to Chapter III, as amended, to be known as Article 14; authorizing stock option plans for state banks, with certain restrictions; providing for perpetual or limited corporate existence for state banks; providing that amendments to Articles of Association of State Banks changing the domicile of any state bank shall be approved by the State Banking Board and further providing that no state bank shall here-

1. See Art. 342-315 and note V.T.C.S.

after move its domicile without prior approval of the State Banking Board; providing a savings clause; providing for severability; providing that all laws or parts of laws which are in conflict with this Act are repealed or modified to the extent of such conflict only; and declaring an emergency."

Appellant attacks the validity of Sec. 3 of S.B. 546, on grounds that it violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, and that it violates Sec. 35 of Art. 3 of the Constitution of Texas, Vernon's Ann.St., for the reason that the subject of Sec. 3 is not expressed in the title.

The following facts are undisputed:

Appellee Texas State Bank presently has its domicile at 1904 Guadalupe Street in Austin, Texas. It proposes to move to 900 Congress Avenue in such city. Appellant, a national bank, has its domicile 144 feet diagonally across the intersection of Ninth and Congress Avenue from the place to which appellee Texas State Bank proposes to move. Texas State Bank contemplates making such move without making any showing to the Board that public necessity and convenience exists for the establishment of a bank at 900 Congress Avenue in Austin, Texas, or that the establishment of a bank at such location would probably be profitable.

Prior to April 6, 1967, Texas State Bank filed with the Federal Deposit Insurance Corporation in Washington an application for approval of a change of its domicile from where now located to 900 Congress Avenue, in Austin, Texas.

Upon learning of Texas State Bank's proposed change of its domicile to diagonally across the intersection for appellant's domicile, appellant petitioned the State Banking Board to give notice of and hold a hearing upon the question of whether Texas State Bank should so move. The Board acknowledged receipt of such petition for a hearing but expressly refused to hold such a hearing.

We do not find it necessary to pass upon appellant's contentions that Sec. 3 of S.B. 546 violates the Due Process or Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution for the reason that, in our opinion, such Sec. 3 is invalid for the reason that its subject is not expressed in the title as required by Sec. 35, Art. 3 of the Texas Constitution, which provides:

"§ 35.  Subjects and titles of bills

Sec. 35. No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

■ The caption gives notice that a law is being enacted which provides that " *  * no state bank shall hereafter move its domicile without prior approval of the State Banking Board. * * *" Yet, in spite of this all encompassing mandate Section 3 of the Act provides that some state banks, under the conditions stated, are exempted and need not procure Board approval before changing domicile. This exemption, as to which no fair notice is given in the captions, renders such exemption void under Sec. 35, Art. 3, supra. See Harris County Fresh Water Supply Dist. No. 55 v. Carr, 372 S.W.2d 523, Tex.Sup. (1963) and Falkner v. Allied Finance Co. of Bay City, 394 S.W. 2d 208, Tex.Civ.App., Austin (1965), writ ref. n. r. e., 397 S.W.2d 846, Tex.Sup. (1966).

We must now determine the effect of this holding upon Art. 14, sec. 2, S.B. 546.

It is our opinion that Art. 14 falls with Sec. 3 even though Sec. 4 of S.B. 546 pro-

vides for severability. The rule to be applied is stated in Texas-Louisiana Power Co. v. City of Farmersville, 67 S.W.2d 235, Tex.Com.App. (1933), quoting from Lewis' Sutherland, Statutory Construction (2nd Ed.) Vol. 1 Sec. 306, as follows:

"If, by striking out a void exception, proviso or other restrictive clause, the remainder, by reason of its generality, will have a broader scope as to subject or territory, its operation is not in accord with the legislative intent, and the whole would be affected and made void by the invalidity of such part."

This rule is amplified in 16 Am.Jur.2d, Constitutional Law, Sec. 192, from which we quote:

"One important class of cases in which questions as to the severability of valid and invalid portions of an act and the determination of the legislative intent are involved consists of statutes containing invalid exceptions or provisos. The general rule is that if such a proviso operates to limit the scope of the act in such a manner that by striking out the proviso the remainder of the statute would have a broader scope either as to subject or territory, then the whole act is invalid, because such extended operation would not be in accordance with the legislative intent. In all such cases the exception of a particular group from the provisions of a general statute may have been a material consideration with the legislature in the passage of the act, and the courts may properly infer that it would not have been enacted if such group had not been excluded from its operation and protected from its provisions. The answer to the argument that if an exception makes a statute unconstitutional the exception should be disregarded and the statute held valid has been said to be that the courts have no lawmaking power and cannot extend a statute to cover that which is excluded by the legislature."

We cannot give effect to Art. 14 without invalid Sec. 3 as directed by severability Sec. 4 without invading the legislative field and extend operation of the statute to state banks not intended to be included. We have neither the disposition or authority to do this. Smith v. Decker, 158 Tex. 416, 312 S.W.2d 632 (1958).

We are thus relegated to the law as it stood before the abortive legislative effort to change the law as indicated in S.B. 546.

Mr. J. M. Falkner, Banking Commissioner of Texas, has been with the Department of Banking of Texas for 37 years and Banking Commissioner for the last 20 years. He made an affidavit in support of appellees' motion for summary judgment which was not controverted. We quote from such affidavit and adopt as the law of this case the practice of the Banking Commissioner and his construction of the banking laws as therein stated and quoted insofar as they apply to the specific facts of this case:

"In February or March of this year Mr. Joseph H. Stjepcevich, President of the Texas State Bank, Austin, Texas, advised me that the bank was considering moving its banking house from its present Guadalupe Street location to a location in downtown Austin. We discussed the details of the bank's plans including the location of the proposed new banking house and drive-in facility, the time within which the bank would probably make the move, proposed changes in the bank's capital structure and other significant factors.

We also discussed the question of the extent to which approvals by bank regulatory authorities would be required. Mr. Stjepcevich recognized that the approval of the Federal Deposit Insurance Corporation would be required in order to keep the bank's deposit insurance in force, and I advised him in effect that no approval would be required of either the Banking Commissioner or the Banking Board except to the extent that I would advise the FDIC in response to its in-

quiry whether or not the Department had objection to the move.

I explained to Mr. Stjepcevich that under Article 12, Chapter III [2] of the Texas Banking Code, State Banking Board approval was required only if the proposed move involved a change of the domicile of the bank to another city or town, and since no such change was contemplated in the move proposed for the Texas State Bank, State Banking Board approval would not be required. I also advised Mr. Stjepcevich that my approval as Banking Commissioner was required only if the bank's articles of association and charter contained a specific location for the domicile of the bank. In such cases the articles of association and charter would have to be amended to change the location, and the amendment would have to be approved by me as Banking Commissioner in the same manner and under the same statutory criteria as is provided for other amendments not requiring Banking Board approval. In such cases the statute requires a finding by the Banking Commissioner 'that the amendment is not violative of law and does not prejudice the interests of depositors and creditors or the public.' Though I could see no basis for objection to the proposed move under the statute, I advised Mr. Stjepcevich that no amendment to the articles of association and charter would be necessary since the Texas State Bank's articles and charter specify only 'Austin, Texas, in Travis County' and do not specify any particular location.

The officers of the Texas State Bank have continued to keep me informed of the bank's plans for moving to a downtown location, and I was furnished a copy of the bank's application to the FDIC for permission to move dated March 31, 1967, which was received by the FDIC on April 3, 1967. In addition, the FDIC made official inquiry to me as Banking Commissioner as to whether the Department of Banking had objection to the proposed move, and I advised the FDIC that the Department had no objection. On or about July 14, 1967, the Department of Banking was officially advised of the FDIC's approval of the move.

My advice to the Texas State Bank that no approval of the State Banking Board nor of the Banking Commissioner would be required for its proposed move to a downtown location was based on an interpretation of the Texas Banking Code which has been continuous since the Code was enacted and which to the best of my knowledge has been uniformly applied by the Department to all state banks. This departmental interpretation is evidenced by the opinion of Judge Ocie Speer, Office Counsel, Department of Banking, of June 28, 1950, in which he sets forth his interpretation of the statute and outlines the past practice of the Department as being in conformity with that interpretation. In my opinion this interpretation is consistent with Attorney General Opinions V–216 dated May 24, 1947, and O–4104 dated October 18, 1941."

■ The affidavit of Mr. Falkner details specific instances in which state banks had acted on his interpretation of the banking laws as above set out including the Fidelity State Bank of Austin which moved from one location on Congress Avenue to another location without permission from either the Board or the Commissioner. This bank was later converted into the City National Bank of Austin appellant herein.

We quote further from the affidavit of Mr. Falkner:

"Therefore, it was the continuous interpretation of the Texas Banking Code prior to the adoption of Senate Bill 546 by the 1967 Legislature that neither the Banking Commissioner nor the State Banking Board had jurisdiction to ap-

---

2. Art. 342–312, V.T.C.S., Acts 1943, 48th Leg. p. 137 ch. 97.

prove or disapprove the change of location of the domicile of any state bank so long as a specific location for the bank was not stated in its articles of association and charter and the proposed change in location was within the limits of the city or town specified in its charter. If a specific location was contained in the charter, the departmental interpretation had consistently been that the Banking Commissioner must approve the change in location as an amendment to the Bank's charter under the same statutory provisions which govern other amendments not requiring Banking Board approval. Only where the contemplated move involved changing the domicile of the bank to another city or town has State Banking Board approval been considered necessary. To my knowledge the contention by the City National Bank which has culminated in the present litigation is the only instance in which it has been contended that State Banking Board approval was required for all changes in domicile of state banks."

We affirm the judgment of the trial court and declare the law to be as stated in this opinion.

Affirmed.