BOARD OF INSURANCE COMMISSIONERS OF TEXAS V.
GUARDIAN LIFE INSURANCE COMPANY OF TEXAS ET AL.

No. A-99.  Decided June 7, 1944
(180 S. W., 2nd Series, 906)

*Grover Sellers,* Attorney General, *George W. Barcus, Ardell Williams, Jas W. Bassett* and *Ocie Speer,* assistants to the Attorney General, for appellant.

It was error for the trial court to hold that the order of the insurance board was invalid as not being authorized by a specific statute; since the board under its general powers of oversight and regulation of insurance companies does have full and adequate power to make such order. Coleman v. Hallum, 232 S. W. 296; 29 Am. Jur. 67; City of Wink v. Griffith Amusement Co., 129 Texas 40, 100 S. W. (2d) 695.

*Crestman, Brundidge, Fountain, Elliott & Bateman* and *J. Hardy Neel,* of Dallas, *Rawlings, Sayers & Scurlock,* of Fort Worth, for appellees.

The order in question is void because the authority to require such additional reserves on life insurance policies, where no extra premiums have been charged, is not conferred by the statute, the language of which is clear and unambiguous, and the order is arbitrary, unreasonable and unjust. Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S. W. 73; Commercial Standard Ins. Co. v. Board of Insurance Commissioners, 34 S. W. (2nd) 343; Humble Oil & Refining Co. v. Railroad Com. 133 Texas 330, 128 S. W. (2d) 9.

MR. JUDGE FOLLEY of the Commission of Appeals delivered the opinion for the Court.

This suit was filed by the Guardian Life Insurance Company of Texas in the 53rd District Court of Travis County seeking an injunction against the Board of Insurance Commissioners, to restrain the board from enforcing an order issued by it requiring all insurance companies to set up a special reserve upon policies issued upon military and naval personnel when such policies failed to contain a war clause limiting the liability of the company

for war casualties to the return of the premiums or the cash value, with or without interest. The Century Life Insurance Company and the Pioneer Life Insurance Company intervened in the cause seeking the same relief. After a hearing the trial court granted a temporary writ of injunction restraining the Board of Insurance Commissioners from enforcing the order. From that judgment in the trial court the appellant Board of Insurance Commissioners has prosecuted an appeal direct to this court under and by virtue of the provisions of Article 1738a, Vernon's Ann. Civ. Stat. and Rule 499-a, Texas Rules of Civil Procedure.

The appellee insurance companies have issued a large number of life insurance policies to certain classes of the armed forces of the United States. These policies each provided for the payment to beneficiaries of $1000, and no more, in the event of death of the insured, and the premium stipulated was the standard or published rates of the respective companies. Before the policies were issued the forms used were submitted to the appellant board in compliance with the requirements of Article 4749, Vernon's Ann. Civ. St. The policies did not contain any war clause, that is, there was no condition in the policies limiting liability on the part of the company in the event the insured died while in military service.

Prior to the issuance of the order by the appallant the three appellee insurance companies had each issued in excess of $20,000,000 of such insurance to selected classes of men in the armed forces, for which there was no extra premium charged in excess of their published rates. It was stipulated that for each of these policies the appellees had set up reserves on the basis of the American Experience Table of Mortality with $3\frac{1}{2}\%$ interest per annum, which is in compliance with the provision of Article 4688, Vernon's Ann. Civ. St., and in accordance with the provisions of the policies issued by each of the companies. On December 21, 1943, the order under attack was issued by appellant which required the appellees to set up an additional reserve of $10 per $1000 upon all policies issued to members of the armed forces subsequent to December 7, 1941. The effect of the order, if the same is enforced, will be to require each of the insurance companies to set up an additional reserve in excess of $200,000.

The essential portion of the board's order in question is as follows:

"Finding that the writing of insurance on the lives of mem-

bers of the armed forces by any company without the safeguard of a restrictive war clause and without setting aside any extra hazard reserves is a practice that is dangerous and misleading to such companies own policy-holders, to the general civilian public and especially to the members of the armed forces, and that it is a matter of paramount interest to the company and to the insurance buying public that the continuation of such practices be restrained.

"Therefore, the Board is of the opinion and so orders:

"That an extra hazard reserve be charged against all life insurance policies issued subsequent to December 7, 1941, and originally issued on the lives of military or naval personnel or on the lives of students actually enrolled in military or naval officers training courses; provided such policies were issued without a war clause which limited the liability of the company in time of war to the return of premiums or the cash value, with or without interest.

"The minimum extra hazard reserve charged against each such policy shall be computed at the rate of $10.00 for each $1,000.00 of insurance in force with respect to such extra hazardous risks, or one-half of the extra premium charged therefor, whichever is greater. Such extra hazard reserve shall be shown as a liability in any published financial statement of any life insurance company that has issued such policies and which operates under the supervision of this Board, and shall be so shown in the annual statement submitted by each such company to this Board. This extra hazard reserve shall be maintained on each such policy until the policy has been terminated, until six months after insured has been released from military or naval service, or until this order has been rescinded after suspension of hostilities, whichever occurs first."

■ Section 3 of Article 4682, Vernon's Ann. Civ. St., makes it the duty of the Board of Insurance Commissioners to calculate the net value as of December 31 of each year on all policies of life insurance "upon the basis and in the manner prescribed by law." The manner of valuing policies is set out in Articles 4688 and 4744 Vernon's Ann. Civ. St. The material portions of Article 4688 merely provide that the Commissioner (now Board of Insurance Commissioners by virtue of Article 4682a, Vernon's Ann. Civ. St.) shall each year compute the reserve liability on the 31st day of December of the preceding year of every insurance company doing business in this State in accordance with the net value on the last day of December of the preceding year of all policies

issued after December 31, 1909, upon the basis of the Actuary's or Combined Experience Table of Mortality, with four per cent interest per annum, and that policies "thereafter issued upon the reserve basis of an interest rate lower than four per cent shall be computed upon the basis of the American Experience Table of Mortality with interest at such lower rates per annum."

Article 4744, upon which appellant chiefly relies, is as follows:

"If any life insurance company doing business under the laws of this State has written or assumed risks that are sub-standard or extra hazardous and has charged therefor more than its published rates of premium, the Commissioner shall in valuing such policies compute and charge such extra reserves thereon as is warranted by reason of the extra hazard assumed and the extra premium charged."

Articles 4688 and 4744 are the only ones pertinent to the question in issue and unless they confer upon the board the authority to issue the above order it must be conceded that no such authority exists. The board can exercise only such authority as is conferred upon it by law in clear and unmistakable terms and the same will not be construed as being conferred by implication. Humble Oil & Refining Co. v. Railroad Commission of Texas, 128 S. W. 2d 9; Commercial Standard Ins. Co. v. Board of Insurance Commissioners of Texas, 34 S. W. 2d 343, writ refused.

■ There is nothing in Article 4688 that even intimates that the Legislature intended to grant the board authority to require greater reserves than the amounts therein stated, and it is conceded by the parties that the reserves required by this statute have been set up by the companies. Nor do we find any intimation of such authority in any of the insurance statutes other than Article 4744. This necessarily relegates appellant to the latter article for the authority to require additional reserves in excess of those provided for in Article 4688.

It will be noted from a literal reading of Article 4744 that the authority of the board to require extra reserves is predicated upon two conditions. One is that the company has written or assumed risks that are sub-standard or extra hazardous and the other is that such company has charged *therefor* more than its published rates of premium. It is uncontroverted that the companies have not charged more than their published rates of premium for the policies issued to the armed forces and there-

fore the board was without authority to issue the order unless it may be determined that it was not the legislative intent that both of the conditions named must simultaneously exist before the board is authorized to require the extra reserves. The appellant insists that to arrive at the correct legislative intent the disjunctive "or" must be substituted for the conjunctive "and" at each of the two places in the statute where the two conditions are mentioned. Such a change would cause the statute to read as follows:

"If any life insurance company doing business under the laws of this State has written or assumed risks that are sub-standard or extra hazardous *or* has charged therefor more than its published rates of premium, the Commissioner shall in valuing such policies compute and charge such extra reserves thereon as is warranted by reason of the extra hazard *or* the extra premium charged."

A very concise statement of the correct disjunctive use of the words "and" and "or" is to be found in 3 C. J. S. 1068, in the following language:

"Ordinarily the words 'and' and 'or,' are in no sense interchangeable terms, but, on the contrary, are used in the structure of language for purposes entirely variant, the former being strictly of a conjunctive, the latter, of a disjunctive, nature. Nevertheless, in order to effectuate the intention of the parties to an instrument, a testator, or a legislature, as the case may be, the word 'and' is sometimes construed to mean 'or.' This construction, however, is never resorted to except for strong reasons and the words should never be so construed unless the context favors the conversion; as here it must be done in order to effectuate the manifest intention of the user; and where not to do so would render the meaning ambiguous, or result in an absurdity; or would be tantamount to a refusal to correct a mistake."

We find nothing ambiguous in the language of the statute in question, nor do we think the context requires the conversion contended for in order to effect the manifest intention of the Legislature. On the contrary, the language as written is clear and unambiguous in expressing the legislative intent to provide for extra reserves upon life insurance policies written upon sub-standard or extra hazardous risks for which the company has charged a premium in excess of its published rates of premium. To change the meaning of the conjunctive word to the disjunctive would not, in our judgment, result in clarification of the

statute but in an unreasonable, incongruous and inconsistent regulation in that it would not only authorize the board to require the setting up of extra reserves where no extra premium had been paid but also to require extra reserves where no extra hazard existed, which would be an irregular and anomalous regulation. The proposed rewording of the statute destroys its obvious meaning and makes the clause "has charged therefor more than its published rates of premium" entirely meaningless or at least ambiguous. The word "therefor," as used in this clause, must necessarily refer to the sub-standard or extra hazardous risks mentioned in the preceding clause. This inference becomes more evident by the fact that in the succeeding clause relative to valuing such policies the computation is predicated upon both the extra hazard and the extra premium. It is therefore plain to us that the Legislature intended that there should be both extra hazardous risks and extra premiums charged "therefor" before the board would be authorized to require extra reserves "thereon as is warranted by reason of the *extra hazard assumed and the extra premium charged."* Any other construction would amount to judicial legislation rather than judicial interpretation. It is for the Legislature and not the courts to remedy defects or supply deficiencies in laws, and to give relief from unjust and unwise legislation. Davis v. White, 260 S. W., 138, writ refused; Gilmore v. Waples, 108 Texas 167, 188 S. W. 1037.

■ Where the language of a statute is unambiguous, and its meaning is clear, the statute must be given effect according to its terms, and "we are not at liberty to speculate upon the intention of the Legislature in its enactment." Vaughn vs. Southwestern Surety Ins. Co., 109 Texas 298, 206 S. W. 920. The proper function of the Court is to declare and enforce the law as made by the Legislature without regard to the policy or wisdom of the act nor to the disastrous or mischievous results it may entail. Gaddy v. First Nat. Bank of Beaumont, 115 Texas, 393, 283 S. W. 472.

We are of the opinion that the board possessed the authority to require the extra reserves only in the event an extra risk is assumed and an extra premium charged therefor, and thus the injunction was properly granted.

The judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court, June 7, 1944.