**FIRST STATE BANK, HEARNE, Texas, et al., Appellants,**

v.

**CITIZENS BANK OF BRYAN et al., Appellees.**

No. 12746.

Court of Civil Appeals of Texas, Austin.

July 19, 1978.

Rehearing Denied Aug. 9, 1978.

T. D. Smith, Edwin Lamm, III, Smith & Lamm, Houston, for appellant First State Bank, Hearne.

John L. Hill, Atty. Gen., Thomas A. Rutledge, Asst. Atty. Gen., Austin, for appellant State Banking Board of Texas.

Larry Temple, Austin, for appellees Citizens Bank of Bryan, et al.

O'QUINN, Justice.

This appeal is from judgment of district court setting aside an order of the State Banking Board, entered October 18, 1976, by which the Board granted First State Bank at Hearne, in Robertson County, permission to change its name to College Station Bank and move its domicile from Hearne to College Station, in Brazos County, a distance of about 22 miles.

Four existing banks, located in Bryan and College Station, protested the application of First State Bank of Hearne before the Banking Board and later instituted their appeal from the Board's order to district court of Travis County. Protestants who appealed to district court, and are appellees before this Court, are Citizens State Bank of Bryan, First Bank and Trust of Bryan, First National Bank of Bryan, and University National Bank of College Station.

From judgment of the district court, appeal has been perfected by the State Banking Board, and by First State Bank of Hearne, intervenor below.

We will reverse judgment of the trial court and will render judgment that the order of the Board be reinstated and approved as valid.

Pending before this Court is motion of appellees, the four banks of Bryan and College Station, to dismiss this suit as moot, or for remand to the Banking Board with instructions to dismiss the application of First State Bank of Hearne. The ground asserted to support the motion is passage by the Legislature of an amendment of Article 342–314, V.A.T.S., relating to change of domicile of state banks, which now provides that "No state bank may change its domicile to a location outside the county where it is located." (Acts 1977, 65th Leg., p. 25, ch. 10, sec. 1, eff. March 10, 1977).

Movants rely on authority of Texas Jurisprudence, and certain cases cited in support, which states, "A case or question before an appellate court may become moot by reason of new legislation, or by reason of the expiration or the superseding of existing legislation." 4 Tex.Jur.2d *Appeal and Error— Civil Cases,* sec. 630 pp. 547–8 (1974).

The order of the Banking Board granting First State Bank permission to change its

name and move its domicile from Robertson County to Brazos County was entered in October of 1976, and protestants' petition appealing from the order was filed in district court on November 12 of 1976. The amendment of Article 342–314, providing for the first time that no state bank could change its domicile from one county to another, became effective March 10, 1977, about five months after the Banking Board entered its order and while appeal from the order was pending in district court.

Appellees place particular reliance on *Clymore Co., Inc. v. Railroad Commission of Texas,* 86 S.W.2d 797 (Tex.Civ.App. Austin 1935, no writ), and *City of Dallas v. Meserole Bros.,* 164 S.W.2d 564 (Tex.Civ.App. Dallas 1942, writ ref'd w.o.m.), in urging that this lawsuit is now moot because Article 342–314 now forbids state banks from moving outside the county where located.

In *Clymore* a temporary injunction granted by the trial court had been predicated upon a statute subsequently superseded, and on appeal this Court held that the questions involved had become moot. This Court observed that the later statute had superseded the prior law and prescribed "definitions, standards, and criteria which in many respects are essentially different from those prescribed or involved in the [earlier statute]." The Court concluded, "We cannot in this proceeding, upon the record made in a hearing involving only . . . [the earlier statute] determine those issues; but are confined to the issues presented by the record as applied to the [earlier law]." 86 S.W.2d 798, col. 1.

Passing on whether the temporary injunction was improvidently granted would have been meaningless, and the case was remanded, although moot, in the manner required in such circumstances by the rule announced in *Danciger Oil & Refining Co. v. Railroad Commission,* 122 Tex. 243, 56 S.W.2d 1075, 1076 (1933).

In *Meserole* a landowner, whose property lay outside municipal corporate limits, started construction of commercial buildings prior to effective date of either annexation or temporary zoning, but before completion of the structures annexation and zoning laws limiting land uses to residential purposes were completed. The appellant court held that the landowner "acquired no vested right to complete the two commercial buildings in a residential area merely because the work was begun prior to the enactment of the temporary zoning ordinance . . ." (164 S.W.2d 568, col. 1) The court pointed out that the municipality acted in exercise of its police powers, to which "all property is held subject." The court dismissed the appeal as moot. (164 S.W.2d 567, col. 2)

The holding in *Meserole* was the principal authority for identical results in a later case similar on the facts, in which no vested rights had been acquired and the city acted under its police powers. *Westwood Development Company v. City of Abilene,* 273 S.W.2d 652 (Tex.Civ.App. Eastland 1954, writ ref'd n. r. e.).

■ In the present lawsuit the Banking Board entered its order in October of 1976 approving amendment to the charter held by First State Bank of Hearne and thereby allowed the bank to change its name and move its domicile to a neighboring county. The original charter and the amendments approved by the Board in 1976 constituted a vested property right, and the Board's order if valid and lawful became effective and enforceable when entered, and at that time was presumed to be valid. *Chemical Bank & Trust Company v. Falkner,* 369 S.W.2d 427, 433 (Tex.Sup.1963); *Brazosport Savings and Loan Association v. American Savings and Loan Association,* 161 Tex. 543, 342 S.W.2d 747, 750–2 (1961).

■ The trial court on November 19, 1976, entered its stay order enjoining the State Banking Commissioner from delivering to First State Bank a new certificate of authority reflecting the new name and the new domicile as approved by the Banking Board in October. The stay order was entered to preserve the *status quo* pending final judicial determination of the order. Since First State Bank was prevented from changing its name and moving to the new

domicile because the Commissioner was enjoined from performing a ministerial act, "involving no exercise of judgment or discretion," and delay in exercise of the bank's rights "resulted solely from the processes of law," the bank was not deprived of its rights. *Gordon v. Lake,* 163 Tex. 392, 356 S.W.2d 138, 141 (1962).

■ As a general rule statutes operate prospectively, and may not operate retrospectively if such would result in impairment of vested rights. A statute is retroactive, and retroactive results are prohibited by the Constitution, if the law takes away or impairs vested rights acquired under existing laws. *American Surety Co. of New York v. Axtell Co.,* 120 Tex. 166, 36 S.W.2d 715 (1931); *International Security Life Insurance Company v. Maas,* 458 S.W.2d 484, 490 (Tex.Civ.App. Houston (1st) 1970, writ ref'd n. r. e.).

■ Nothing in the Act of 1977 by which the Legislature amended Article 342–314 indicates other than prospective application beginning with the law's effective date, March 10, 1977. We conclude that the statute as amended was not intended to, and did not, divest or impair the vested rights First State Bank acquired in its franchise as amended by the State Banking Board effective October 18, 1976. Motion to dismiss this suit as moot is overruled, and we proceed to consider the appeal on its merits.

The trial court filed findings of fact and conclusions of law, prefaced by the observation that the district court, in appeals from administrative proceedings, is not called upon to make findings of fact, except as to irregularities occurring before the administrative body and not reflected in the record. The trial court made four findings of fact which will be considered later.

The conclusions of law are the principal target of attack by appellants. The first conclusion of law, from which other conclusions logically flow, is the following:

"Article 342–314, V.A.T.S. and the State Banking Board's Rule No. 055.03.-08.001 require that a state bank seeking to change its domicile prove and the

Board find a public necessity exists for the proposed move. To meet this requirement, an applicant must prove and the Board must find that there is a substantial or obvious community need in light of attendant circumstances for the bank *to abandon its present location* and that there is a substantial or obvious community need in light of attendant circumstances for the applicant bank to relocate at the new site for which it seeks approval." (Emphasis added)

The obvious impact of this conclusion of law is to require an applicant bank, seeking change of domicile, to prove not only a public necessity that the bank fulfill a need in the proposed new location, but also that the applicant prove no public necessity for the bank to remain in the location in which it already operates. Taken to its logical conclusion, such requirement would also oblige the Banking Board reasonably to support both such ultimate findings by substantial evidence. We must look to the statute and the rule to determine whether dual proof and findings in instances of change of domicile are indispensable to validity of an order.

■ Under Article 342–314, prior to amendment and since its amendment in 1977, no state bank may change its domicile ". . . without first having received approval for such change from the State Banking Board *in the manner provided for the approval of an original application for a charter.*" (Emphasis added) Applications for and granting of charters are controlled by Article 342–305. The burden of proof and meeting conditions of the following are upon the applicant:

"(1) A public necessity exists for the proposed bank; (2) The proposed capital structure is adequate; (3) The volume of business in the community where such proposed bank is to be established is such as to indicate profitable operation of the proposed bank; (4) The proposed officers and directors have sufficient banking experience, ability and standing to render success of the proposed bank probable; and (5) The applicants are acting in good

faith." (Art. 342–305(A)(1), (2), (3), (4), and (5).

■ It is settled that the State Banking Board, in its functioning as an administrative body, may exercise only such authority and impose only such standards as are found in the statutes in clear and unmistakable language, and such authority will not be construed as conferred by implication. *Board of Insurance Commissioners v. Guardian Life Ins. Co.,* 142 Tex. 630, 180 S.W.2d 906, 908 (1944); *Key Western Life Insurance Company v. State Board of Insurance,* 163 Tex. 11, 350 S.W.2d 839, 848 (1961).

■ Since the Banking Board, before approving an application for change of domicile, must follow the standards "provided for the approval of an original application for a charter," the first finding must be that a "public necessity exists for the proposed bank," under Article 342–305(A)(1). The only *proposed* bank in an application for change of domicile is the bank the applicant proposes to operate in the new domicile. Coupled with that determination is necessarily that of ascertaining whether the volume of business, in the community where the proposed operation is to be established, is sufficient to indicate a profitable operation, under Article 342–305(A)(3).

The State Banking Board contends, and we agree with the contention, that it is obvious from the plain meaning of these two provisions of the statute that the applicant is required to prove, and the Board to find, only that a public necessity exists in the community in which the bank proposes to make its relocation and that the volume of business in the area of new location is sufficient to indicate a profitable operation. It was error for the trial court to insist upon a dual proof and dual finding to include both the *present* location and the *proposed new location* of the bank. We note, however, that the trial court did not find that First State Bank was required to prove, and the Board to find, that *the volume of business* in the present location was insufficient to indicate a profitable operation.

We find nothing in Article 342–305(A)(1) and (3) to indicate that the Legislature intended to grant the Banking Board authority to require greater proof by an applicant bank than to show a public necessity and a probable profitable operation in the proposed new domicile, nor do we find in the statute anything so much as intimating or suggesting that the applicant must show, in addition, that there is no public necessity to remain in the present location, or that the volume of business in the present location is such as to indicate the bank will not have a profitable operation. The language of the statute is clear and unambiguous in expressing the legislative intent that the Banking Board must determine from proof made whether in the new location there is a public necessity and a reasonable probability of success, without regard to conditions in the present location.

■ If it may be regarded as desirable for the Banking Board to look at both the present and the proposed location, with respect to public necessity and probability of success, the standard for making such inquiry and findings may not be imposed by the Board, nor supplied by the courts, but only the Legislature may prescribe the required standards. *Board of Insurance Commissioners v. Guardian Life Insurance Company, supra; Mathews Construction Company v. Jasper Housing Construction Co.,* 528 S.W.2d 323, 326 (Tex.Civ.App. Beaumont 1975, writ ref'd n. r. e.); *Vargas v. Allied Finance Co.,* 545 S.W.2d 231, 234 (Tex.Civ. App. Tyler 1976, writ ref'd n. r. e.).

The trial court reached conclusions that (1) the finding of the Banking Board that ". . . the officers and directors of the bank have sufficient banking experience, ability and standing to render success of the bank probable . . ." and (2) the further finding ". . . that the proposed capital structure is adequate . . ." were not reasonably supported by substantial evidence. We agree with the Banking Board's contention that in each of these conclusions the trial court erred.

As pointed out earlier, applications for change of domicile receive approval by the Banking Board "in the manner provided for the approval of an original application for a charter." Articles 342–314 and 342–305. The term "in the manner" refers to the procedure or mode of obtaining review and approval of the application to change the bank's domicile. *Logan v. Stephens County*, 98 Tex. 283, 83 S.W. 365 (1904), quoting with approval from *Brown v. O'Connell*, 36 Conn. 432, 4 Am.Rep. 89. See also *Ross v. Conco Quarry, Inc.*, 543 S.W.2d 568, 575 (Mo.Ct.App.1976).

Upon examination of the standards for granting approval of new charters, as set out in Article 342–305, it is apparent that the five standards, when applied to an application for change of domicile, are not applicable to the same extent as required for new banks without a history of operation. For example, under the *first* standard (existence of public necessity) and the *third* standard (volume of business indicating profitable operation) the Board may require the same proof in a change of domicile as in grant of a new charter.

Yet under the *second* standard (adequate capital structure) and the *fourth* (officers and directors have experience, ability and standing to render success probable) the Board may find new and extensive proof needless in instances of changing a domicile, as compared with proof under a completely new venture by a bank not previously in operation. Fairly comparable considerations are found in *original* applications for savings and loan associations and for establishment of a *branch* office by an already established association. See *Strain v. Lewis*, 461 S.W.2d 498, 501 (Tex.Civ.App. Austin 1971, writ ref'd n. r. e.).

The language of Article 342–305(A)(2) and (4) clearly applies more precisely to standards of proof to be met by applicants for a new charter. Under subsection (2) proof must be that the "*proposed* capital structure is *adequate.*" The *proposed* capital structure in a change of domicile is of course the same under which the bank has been operating prior to making its applica-

tion to move to a new location. Under subsection (4) the proof called for is a showing that the "*proposed* officers and directors have sufficient banking experience, ability and standing to render success of the *proposed* bank probable." Obviously, in considering an application for change of domicile, the *proposed* officers and directors are the identical officials already operating a chartered bank, and *success of* the *proposed* bank can, in a change of domicile, refer only to the *proposed* new location for the same bank.

An established bank, seeking to move its location, is already under the supervision of the State Banking Board and the Commissioner, and by reason of official records its capital structure and the competence of its officers and directors are matters at least constructively within the knowledge of the Board. Some of the standards therefore under Article 342–305(A) may already be established when the Board has under consideration an application to change the bank's place of operation.

The president of First State Bank testified at the hearing, relating his banking connections and something of his experience, and also testified concerning the connections and experience of the chairman of the bank's board of directors, and that both these officers would continue their connection with First State Bank. A field examination report, officially noticed at the hearing, stated, "Present officers and directorate appear to be satisfactory at their respective positions. No new officers were disclosed."

In addition, the bank president testified regarding the bank's capital as of the date of the hearing, and an analysis of the capital was introduced in documentary form. The president testified concerning future capital plans, and the order of the Board was conditioned on infusion of $1,000,000.00 in additional capital. The capital structure of the bank was a subject treated in the field examination report.

Capital of First State Bank at the time of the hearing was $436,000. Present management was required to infuse additional capi-

tal, sufficient to bring the bank's capital to $1,436,000 with which to begin its operations in College Station. The Board conditioned its approval of relocation upon the increase in capital being made prior to removal. Conditional approval is authorized under Article 342–305(D). *State Banking Board v. Airline National Bank*, 398 S.W.2d 805, 809 (Tex.Civ.App. Austin 1966, writ ref'd n. r. e.).

■ We conclude that the findings of the Board as to capital structure and as to experience, ability, and standing of the officers and directors are reasonably supported by substantial evidence.

The trial court concluded that the "Board improperly relied upon the Field Examination Report as authority for some of its underlying findings of fact." The field examination report was prepared by a banking examiner for the State, who was authorized to conduct an examination in connection with the application First State Bank filed to change its name and move from Hearne to College Station. At the time of the hearing in August of 1976 the report was part of the files of the Banking Department, and at the outset of the hearing the hearing officer advised all parties that the Banking Board would consider the matters in its file, "particularly our investigation report" prepared by the banking examiner.

No objection or protest was made, and counsel for protesting parties announced during the hearing that counsel knew the Board would take official notice of its records and had obtained a certified copy. Subsequently during the hearing counsel for First State Bank quoted from the Field Examination Report with particular reference to the proposed capital increase, to which no objection was made.

Upon the filing of an application the Banking Commissioner ". . . shall proceed to conduct a thorough investigation of the application, the applicants and their personnel . . ." Article 342–305(C). Other independent inquiries are permitted or required under the statute, in connection with an application. It is evident that the Legislature deemed such investigations valuable and essential tools for the State Banking Board. We conclude from the record that the Field Examination Report was available to all parties, although not actually introduced as evidence at the hearing.

■ Article 6252–13a, V.A.T.S. (Administrative Procedure Act), effective January 1, 1976, requires administrative agencies, intending to consider matters within the agency's files, to give notice to the parties of this consideration. The Supreme Court has held that the law should be followed but concluded, "*If a showing of harm or prejudice is made* because of failure . . to give such notice, a reversal and remand would be required." (Emphasis added) *Imperial American Resources Fund, Inc. v. Railroad Commission*, 557 S.W.2d 280, 288 (Tex.Sup.1977). Even though it be contended that the notice regarding the Field Examination Report was inadequate and opportunity not complete to contest the material noticed by the Banking Board, no harm or prejudice has been shown because of such failure and the error, if error there was, will be treated as harmless and not sufficient grounds for reversal.

We believe, however, that the record reveals that the parties were sufficiently placed on notice that matters contained in the Field Examination Report would be considered by the Banking Board in passing on the application of First State Bank to relocate. No objection was made by the parties opposing the application.

The sixth and last conclusion upon which the trial court based its judgment stemmed from a finding of the court that Robert Stewart, the Banking Commissioner, had not read or reviewed the record of evidence and testimony compiled before the hearing officer prior to casting one of the two votes to approve the application, which brought the court to the conclusion that ". . . since no proposal for decision was served on the parties, the Board's action" was in violation of Section 15 of Article 6252–13a, V.A.T.S. (Administrative Procedure Act).

■ Section 15 provides that:

"If in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, may not be made until a proposal for decision is served on the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs to the officials who are to render the decision."

Appellees opposing First State Bank's change of domicile insist that Section 15 is applicable in this case and because a proposal for decision was not served on the parties the order was invalid. Appellees argue, "When a three member agency votes two to one on an application, the two members in the majority are 'the agency officials who are to render the final decision.' When one of those two has not heard the case or read the record, the proposal for decision provision of Section 15 of the A.P.A. applies."

We do not understand the language of the statute to produce such result. We construe the statute to mean that the records must have been read by "a majority of the officials of the agency who are to render the final decision," as distinguished from the officials of the agency having only executive or administrative duties, and we construe that phrase in Section 15 to mean a majority of the officials of the agency who are authorized by law to render final decisions in a legislative capacity. In this case a majority of the officials empowered to make a final decision on the application evidently had read the record. Of the majority of two who had read the record, one official voted to grant the application and the other voted to deny the application. The order granting the change of domicile was the order of the State Banking Board, although one member of the Board dissented and would have denied the application.

From a practical standpoint, if the view of appellees is accepted and controls the interpretation of Section 15, a legal decision and valid order would become impossible on any three-member board or agency, unless the two members having read the record should vote together to grant or to deny, or until a proposal for decision is first served. In the present case, Member Lindsey voted to grant, and Member Stevens voted to deny the application. Commissioner Stewart, the only member who had not read the record, could vote with either Lindsey or Stevens and no valid decision or order would result under appellees' construction. For appellees contend that "the *two members in the majority* under Section 15 are the agency officials" who vote together to make the final decision. Under that interpretation, Stewart's vote with either of the other members would prevent the Banking Board from reaching a valid decision or issuing a valid order.

We find no appellate decisions of this state construing this aspect of Section 15, and the parties have offered none. A Maryland court has construed provisions of an administrative procedure statute in that state comparable to Section 15. The gist of these decisions is that in a contested case "the evidence need not be heard by all those who will render the final decision" and the statute "contemplates that . . . the evidence will not be heard by all those who will render the decision." *Younkin v. Boltz,* 241 Md. 339, 216 A.2d 714 (1966); *Bethesda Management Services, Inc. v. Department of Lic. & R.,* 276 Md. 619, 350 A.2d 390 (1976).

We hold that under Section 15 unless a majority of *all* the members of the board or agency, having the duty under law to make decisions in contested cases, have read the record, the agency board must comply with the statute and serve the parties with a proposal for decision.

The judgment of the trial court setting aside and holding invalid the order of the State Banking Board is reversed. Judgment is rendered declaring valid and lawful the order of the Banking Board granting the application of First State Bank to change its name and move its domicile to College Station. The cause is remanded to the State Banking Board with instructions to the Banking Commissioner to grant the

necessary certificates and approval to carry out the order of the Banking Board. Costs are assessed against appellees.

Reversed and Rendered and Cause Remanded with Instructions.