**CITIZENS BANK OF BRYAN et al., Petitioners,**

v.

**FIRST STATE BANK, HEARNE, Texas et al., Respondents.**

No. B–7897.

Supreme Court of Texas.

April 18, 1979.

Rehearing Denied May 16, 1979.

Larry Temple, Austin, for petitioners.

Smith & Lamm, T. D. Smith, Houston, Mark White, Atty. Gen., Thomas A. Rutledge, Asst. Atty. Gen., Austin, for respondents.

STEAKLEY, Justice.

The First State Bank of Hearne was chartered by the State Banking Board in 1957, with its domicile in Hearne, Robertson County, Texas. Under date of May 17, 1976, the Bank applied for an amendment of its Articles of Association to change its domicile from Hearne to College Station, Brazos County, Texas, and to change its name to College Station Bank. College Station is located in the adjoining county of Brazos, a distance of 27 miles. College Station and Bryan, Texas, are located in Brazos County. The four existing banks in Bryan and College Station protested the application.[1] The State Banking Board, by a vote of two of its three members, approved the change in domicile and name by order dated October 18, 1976, whereupon the protesting banks sought judicial relief by appeal. The District Court, by judgment dated October 6, 1977, sustained the appeal and set aside the approval of the Board. Upon further appeal by the First State Bank of Hearne, and the State Banking Board, the Court of Civil Appeals reversed the judgment of the District Court and reinstated the order as valid. 569 S.W.2d 604. The four protesting banks are our Petitioners at whose instance writ of error was granted. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

---

1. Citizens Bank of Bryan, First Bank & Trust of Bryan, First National Bank of Bryan and University National Bank of College Station.

The Articles of Association of a state bank are required to contain "The city or town and the county of its domicile." Tex. Rev.Civ.Stat.Ann. art. 342–304. Pursuant to an amendment in 1967, art. 342–314 provided at the time of the order of the State Banking Board here in question:

No state bank shall hereafter change its domicile without first having received approval for such change from the State Banking Board in the manner provided for the approval of an original application for a charter.[2]

Rule number 055.03.08.001 was thereafter adopted by the State Banking Board:

A bank may not change its domicile without prior approval from the State Banking Board in accordance with Article 14, Chapter III of the Texas Banking Code. An application to change domicile shall be in writing and be filed with the Banking Commissioner. The application shall state the exact proposed new location and shall be supported with statements, exhibits, maps and other data, properly verified under oath. The application shall also include a statement regarding the estimated cost of the new facility. Each application for a domicile change shall be filed, set for hearing, have notice given, and be ruled upon in the same manner as provided for new charter applications.

■ The term "domicile" is not defined in the Code but it may be said that the domicile of a state bank is where it has been authorized to engage in the banking business and to serve a particular banking constituency. Clearly the change sought by the First State Bank of Hearne, i. e., from serving the City of Hearne, in Robertson County, for which it was originally chartered, to serving the City of College Station, in Brazos County, is a change in domicile to which the statute applies. Cf. *City National Bank of Austin v. Falkner*, 428 S.W.2d 429 (Tex.Civ.App.1968, writ ref'd, no reversible error with Per Curiam opinion), Tex., 432 S.W.2d 689.

■ The statute requires that the approval for a change in the domicile of a state bank first be received from the State Banking Board in the manner provided for the approval of an original application for charter. Pursuant thereto the Board in its rule, quoted above, outlined the procedure it would require. Neither the statute nor the rule of the Board speaks expressly to the substantive issues to be resolved, and the question thus posed is one of first impression. We find the answer in the statutory scheme of regulation of banks and the reasonable intendments arising therefrom.

It is apparent from a reading of the Board order here that consideration was limited to the question of whether it was shown that public necessity required a new bank in College Station. Indeed, it can be fairly stated that as to the issue of public necessity, the Board determined the change of domicile application of the Hearne bank no differently from an original application to serve College Station, with no consideration given to the public necessity previously found to require the chartering of the First State Bank of Hearne in 1957.

But there is an inherent difference between the two proceedings. An original application invokes consideration by the Board of the public necessity with respect to the place to be served by a new bank. Article 342–305 provides in part:

Art. 342–305. Application for and Granting of Charters—Approval

A. Applications for a State bank charter shall be granted only upon good and sufficient proof that all of the following conditions presently exist:

(1) A public necessity exists for the proposed bank;

(2) The proposed capital structure is adequate;

It is not necessary under our disposition of this appeal to decide the contention of the protesting banks that this intervening amendment mooted the controversy in their favor.

**2.** Article 342–314 was again amended, effective March 10, 1977, by the addition of this prohibition:

"No state bank may change its domicile to a location outside the county where it is located."

(3) The volume of business in the community where such proposed bank is to be established is such as to indicate profitable operation of the proposed bank;

(4) The proposed officers and directors have sufficient banking experience, ability and standing to render success of the proposed bank probable; and

(5) The applicants are acting in good faith.

The burden to establish said conditions shall be upon the applicants.

Tex.Rev.Civ.Stat.Ann. art. 342–305 (1973).

A change of domicile application, on the other hand, by which approval is sought to move an existing bank from the place it was chartered to serve to a new and different banking community, invokes consideration by the Board of the public necessity in both locations. It is our view that the Legislature did not intend that the statutory responsibility of the Board would be one and the same in these differing circumstances. The First State Bank of Hearne sought a banking charter with Hearne and Robertson County as its domicile and was granted the requisite charter upon proof of public necessity and a reasonable probability of a profitable operation there. It was under the burden of establishing that the abandonment of this banking service would be consistent with the public necessity previously determined by the Board to require the service.

■ It is argued in behalf of the Board that while it might be agreed that in domicile change hearings there should be some standard concerning the community where the bank is currently doing business, none has been supplied by the Legislature. In our view, the standard we have recognized is implicit in the statutory scheme of regulation. Cf. *Chemical Bank & Trust Company v. Falkner,* 369 S.W.2d 427, 432 (Tex. 1963). The legislative intent is to be determined from the entire statute and the object of construction is to ascertain and enforce such intent. *City of Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W.2d 273 at 278 (1951); *Magnolia Petroleum Co.*

*v. Walker,* 125 Tex. 430, 83 S.W.2d 929, 934, *cert. denied* 296 U.S. 623, 56 S.Ct. 144, 80 L.Ed. 442 (1935). The question is not whether the Board is "authorized" by statute to make the determination of public interest in the respects discussed above, as argued by the Board; the question is whether it is the duty of the Board to do so in the discharge of its statutory responsibilities in regulating the banking business in Texas. We hold that it was; and the Board not having done so here, its order must fall.

For the future guidance of the Board, we will rule on one other matter as to which we are in disagreement with the holding of the Court of Civil Appeals. Tex.Rev.Civ. Stat.Ann. art. 6252–13a, § 15, the Administrative Procedure Act, provides:

If in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, may not be made until a proposal for decision is served on the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs to the officials who are to render the decision.

The State Banking Board is composed of three members. None heard this contested case. Two of the members had read the record; the third had not. A final decision approving the application was made by the affirmative vote of two of the three members, one of whom was the member who had not read the record. Notwithstanding, a proposal for decision was not served on the parties, and an opportunity was not afforded the adversely affected parties to file exceptions and briefs prior to the final decision.

■ The Court of Civil Appeals has construed the statute as applying only where a majority of the officials empowered to make a final decision had not read the record, and two of the three had done so here. The statute can be so read. However, this construction defeats the statutory purpose that cases before administrative

348

bodies will not be decided by agency officials who had neither heard the case nor read the record of the administrative hearing. Cf. *Webster v. Texas & Pacific Motor Transport Co.,* 140 Tex. 131, 166 S.W.2d 75 (1942). The cardinal rule in statutory interpretation and construction is to seek out the legislative intent from a general view of the enactment as a whole, and, once the intent has been ascertained, to construe the statute so as to give effect to the purpose of the Legislature. *Board of Ins. Com'rs v. Great Southern Life Ins. Co.,* 150 Tex. 258, 239 S.W.2d 803 at 808 (1951). It is recognized that a statute is to be construed with reference to its manifest object, and if the language is susceptible of two constructions, one of which will carry out and the other defeat such manifest object, it should receive the former construction. *In re National Guard,* 71 Vt. 493, 45 A. 1051 (1899); 2A, Sutherland, Statutory Construction, § 46.05 (1973); cf. *City of Corpus Christi v. Southern Community Gas Co.,* 368 S.W.2d 144 (Tex.Civ.App.1963, writ ref'd n. r. e.).

■ This is illustrated here where only two of the officials had read the record, one of whom voted approval and the other disapproval, with the deciding vote cast by the third official who had not read the record. The words of the statute, "a majority of the officials of the agency *who are to render the final decision,*" may be construed as intending that the requirement of the service of a proposal for decision on the parties shall arise when it is determined that the officials, one or more, who vote in favor of the final decision have not read the record. This construction is reasonable and, more importantly, comports with and carries out the statutory concept that at such time and under such circumstances parties adversely affected by such tentatively determined final decision will be afforded an opportunity to challenge its correctness in the light of the administrative record.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

DENTON, J., dissenting.

DENTON, Justice, dissenting.

I respectfully dissent. It is my opinion that the court of civil appeals has correctly decided this case, and I agree with that court's opinion. Tex.Civ.App., 569 S.W.2d 604.