April 1, 2008

The Honorable Wayne Smith
Chair, Committee on County Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0611

Re: Whether chapter 572, Government Code, relating to the filing of personal financial statements, is applicable to the board members of the Tobacco Settlement Permanent Trust Account Investment Advisory Committee (RQ-0626-GA)

Dear Representative Smith:

You seek our opinion regarding whether chapter 572, Government Code, relating to the filing of financial statements, is applicable to the board members of the Tobacco Settlement Permanent Trust Account Investment Advisory Committee.[1]

## I. Background

To answer your question, it is helpful to understand the origin of the Tobacco Settlement Permanent Trust Account Investment Advisory Committee.

### A. Tobacco Litigation

In 1996 the attorney general sued the tobacco industry on behalf of the State of Texas. *See State of Tex. v. Am. Tobacco Co.*, No. 5-96CV-91, (E.D. Tex. July 24, 1998); *see also* SENATE COMM. ON FINANCE, BILL ANALYSIS, Tex. H.B. 1161, 76th Leg., R.S. (1999); HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 1161, 76th Leg., R.S. (1999). The lawsuit sought to recover money the State had expended to treat Medicaid patients for tobacco-related illnesses. *See State of Tex. v. Am. Tobacco Co.*, No. 5-96CV-91, (E.D. Tex. July 24, 1998); *see also* HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 1161, 76th Leg., R.S. (1999). In July 1998, the parties reached a settlement agreement wherein the tobacco industry agreed to pay the State of Texas billions of dollars over twenty-five years. *See* HOUSE COMM. ON APPROPRIATIONS, BILL ANALYSIS, Tex. H.B. 1161, 76th Leg., R.S. (1999); HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 1161, 76th Leg., R.S. (1999).

---

[1]*See* Letter from Honorable Wayne Smith, Chair, Committee on County Affairs, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Sept. 13, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

### B.     Settlement Agreement

"Hospital districts and counties had intervened in the settlement, claiming that it would have barred them from obtaining damages of their own for all of the tobacco-related indigent health care they have provided." HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 1161, 76th Leg., R.S. (1999). The attorney general entered into a separate settlement agreement ("settlement agreement") with the intervening hospital districts and counties.[2] *See id.* In the separate settlement agreement, the State agreed to "direct $2.275 billion[3] to a permanent trust account from which Texas counties and hospital districts would be reimbursed for costs of indigent health care." *Id.* (footnote added).

The settlement agreement provided that all of the money received by the State resulting from the increased payments from a most-favored-nation provision would be distributed to the "exclusive benefit" of the "Political Subdivisions."[4] Agreement, *supra* note 2, ¶ 4. The settlement agreement allocated the money into two fund pools. *See id.* One of the fund pools was the Permanent Trust Account (the "Trust Account") for the "exclusive and long term benefit" of the political subdivisions. *Id.* The Trust Account was to be placed under the auspices of the Comptroller but used for "the exclusive benefit of the Political Subdivisions." *Id.* Moreover, the settlement agreement expressly stated that "[i]n no event shall the Permanent Trust Account be placed into the State Treasury, nor shall such Permanent Trust Account funds or any earnings generated therefrom be subject to legislative appropriation." *Id.*

With respect to management of the Trust Account, the settlement agreement provided that the Comptroller was to "manage and invest the funds . . . for the exclusive benefit of the Political Subdivisions." *Id.* ¶ 6. "In addition, the Comptroller shall act as paying agent for purposes of making distributions of the earnings from the Permanent Trust Account." *Id.* The settlement agreement also called for the creation of an advisory board "consisting of representatives of the Political Subdivisions [to be] created . . . for the express purpose of providing advice and consultation to the Comptroller of Public Accounts regarding investments of the Permanent Trust Account." *Id.*

### C.     Legislation

The Legislature enacted House Bill 1161 as the enabling legislation for the settlement agreement. *See* SENATE COMM. ON FINANCE, BILL ANALYSIS, Tex. H.B. 1161, 76th Leg., R.S.

---

[2]"Agreement Regarding Disposition of Settlement Proceeds," in *State of Tex. v. Am. Tobacco Co.*, No. 5-96CV-91, (E.D. Tex. July 24, 1998) [hereinafter Agreement].

[3]"The $2.275 billion accrued to Texas because of a 'most favored nation' provision in the tobacco settlement, which awarded Texas with increased payments comparable to Minnesota's subsequent settlement on somewhat more favorable terms." HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 1161, 76th Leg., R.S. (1999).

[4]The settlement agreement defines the "Political Subdivisions" to mean "all hospital districts, other local political subdivisions owning and maintaining public hospitals, and counties of the State of Texas responsible for providing indigent health care to the general public." Agreement, *supra* note 2, ¶ 3(e).

(1999); HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 1161, 76th Leg., R.S (1999); *see also* Act of May 27, 1999, 76th Leg., R.S., ch. 753, § 1.01, 1999 Tex. Gen. Laws 3364, 3364. House Bill 1161 gave the Comptroller the trustee and investment manager-type duties envisioned by the settlement agreement. *See* Act of May 27, 1999, 76th Leg., R.S., ch. 753, § 1.01, 1999 Tex. Gen. Laws 3364, 3364–66 (codified at TEX. GOV'T CODE ANN. §§ 403.1041–.1042). The enabling legislation also placed certain administrative duties with the Texas Department of Health. *Id.* § 2.01, at 3368–69 (codified at TEX. HEALTH & SAFETY CODE ANN. §§ 12.132–.134). And the enabling legislation created two eleven-member advisory committees: one to advise the Comptroller; and one to advise the Department of Health. *Id.* § 1.01, at 3365–66; 3369–70 (codified at TEX. GOV'T CODE ANN. § 403.1042; TEX. HEALTH & SAFETY CODE ANN. § 12.137).

Pertinent to your question, House Bill 1161 created the Tobacco Settlement Permanent Trust Account Investment Advisory Committee (the "committee"). *See* TEX. GOV'T CODE ANN. § 403.1042 (Vernon Supp. 2007). The committee is made up of eleven members: One member of the committee is appointed by the Comptroller and the other members are appointed by representatives of the political subdivisions.[5] *See* TEX. GOV'T CODE ANN. § 403.1042(b) (Vernon Supp. 2007). The committee advises the Comptroller with respect to the Trust Account. *See id.* § 403.1042(a); *see also id.* § 403.1041(b) (Vernon 2005) (authorizing the Comptroller to administer and manage the assets of the account "[w]ith the advice of and in consultation with the advisory committee"), 403.1041(c) ("In managing the assets of the account, the comptroller, with the advice of and in consultation with the advisory committee . . . ."), 403.1041(e) (stating that "[t]he comptroller, with the advice of and in consultation with the advisory committee, may use the earnings" as specified). Specifically, the committee "shall provide the comptroller guidance with respect to the investment philosophy that should be pursued in managing these assets and the extent to which, at any particular time, the assets should be managed to maximize growth of the corpus or to maximize earnings." *Id.* § 403.1042(a) (Vernon Supp. 2007). The Legislature expressly provided that, with a specified exception, "the advisory committee serves in an advisory capacity only and is not a fiduciary with respect to the account." *Id.*

The specified exception involves the Comptroller's power to adopt rules. The Comptroller is given, in section 403.1041(h), the power to adopt rules necessary to "implement the comptroller's duties" under section 403.1041. *See id.* § 403.1041(h) (Vernon 2005). The Comptroller's rule, however, may not become effective without the approval of the committee. *Id.*

With that extensive background, we consider your question about the committee.

## II.    Texas Ethics Commission

In 1999, the Texas Ethics Commission (the "Commission") determined that the committee was not a state agency and, accordingly, that the members of the committee were not required to file

---

[5]The representatives of the political subdivisions that are designated to appoint members to the committee include the: political subdivisions that, in the preceding year, received certain large distributions from the Account, the County Judges and Commissioners Association of Texas, the North and East Texas County Judges and Commissioners Association, the South Texas County Judges and Commissioners Association, the West Texas County Judges and Commissioners Association. *See* TEX. GOV'T CODE ANN. § 403.1042(b)(2)–(8) (Vernon Supp. 2007).

personal financial statements under chapter 572, Government Code.[6]   More recently, the Commission determined that the committee is a state agency such that its members must file a financial statement under chapter 572.[7]   Noting a need for clarification on the question, you ask whether the members of the committee must file the chapter 572 financial statements. *See* Request Letter, *supra* note 1, at 1.

We must first consider whether it is appropriate for the Office of the Attorney General to opine on this matter.  The Commission is charged with the administration and enforcement of chapter 572, which pertains to personal financial disclosures, standards of conduct, and conflicts of interest.  *See* TEX. GOV'T CODE ANN. § 571.061(a)(1) (Vernon Supp. 2007) (providing for the Commission's authority over chapter 572).  *See generally id.* ch. 572 (Vernon 2004 & Supp. 2007) (chapter entitled "Personal Financial Disclosure, Standards of Conduct, and Conflict of Interest"). And the Commission is authorized to prepare written opinions about the application of chapter 572. *Id.* § 571.091(a)(5) (Vernon Supp. 2007).  The Commission's governing statute expressly provides that the "authority of the commission to issue an advisory opinion does not affect the authority of the attorney general to issue an opinion as authorized by law." *Id.* § 571.096(a) (Vernon 2004). Moreover, the Commission's enabling legislation provides that the Commission "shall rely on opinions issued by the attorney general and the courts of this state." *Id.* § 571.096(c).  Here, you claim there is sufficient confusion on the matter to justify clarification by the Office of the Attorney General. *See* Request Letter, *supra* note 1, at 1 (stating that you believe "there exists sufficient confusion on this issue to warrant clarification").  Therefore, we will independently assess whether the members of the committee are subject to the financial statement requirement.

## III.   Legal Analysis

### A.   Chapter 572, Government Code, Financial Statements

For purposes of chapter 572, Government Code, a financial statement must generally include "an account of the financial activity of the individual required . . . to file a financial statement and an account of the financial activity of the individual's spouse and dependent children [under certain circumstances]." TEX. GOV'T CODE ANN. § 572.023(a) (Vernon 2004); *see also id.* § 572.023(b) (listing requirements for an account of financial activity).  Under chapter 572, financial statements are required of state officers.[8]  *Id.* § 572.021 (Vernon Supp. 2007).

---

[6]*See* Texas Ethics Commission Request For Determination of Filing Status (Oct. 19, 1999) (attached to Request Letter, *supra* note 1) (on file with the Opinion Committee).

[7]*See* Letter to Martin A. Hubert, Deputy Comptroller, Texas Comptroller of Public Accounts, from Natalia Luna Ashley, General Counsel, Texas Ethics Commission (May 2, 2007) (attached to Request Letter, *supra* note 1) (on file with the Opinion Committee).

[8]A financial statement is also required of a "partisan or independent candidate for an office as an elected officer" and a "state party chairman." TEX. GOV'T CODE ANN. § 572.021 (Vernon Supp. 2007).  Neither of these is of concern here.

A "state officer" under chapter 572 is defined, in relevant part, to include "an appointed officer." *See id.* § 572.002(12). An "appointed officer" is, again in relevant part, "an officer of a state agency who is appointed for a term of office specified by the Texas Constitution or a statute of this state." *Id.* § 572.002(1)(C). And for purposes of chapter 572, a "state agency" is:

> (A)  a department, commission, board, office, or other agency that:
>
> >  (i)  is in the executive branch of state government;
> >
> >  (ii)  has authority that is not limited to a geographical portion of the state; and
> >
> >  (iii)  was created by the Texas Constitution or a statute of this state;
>
>  . . . .

*Id.* § 572.002(10); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 105.001(3) (Vernon 2005) (providing similar definition of "state agency"); TEX. GOV'T CODE ANN. § 2004.001 (Vernon 2000) (same); TEX. HEALTH & SAFETY CODE ANN. § 361.421(10) (Vernon 2001) (same); TEX. LAB. CODE ANN. § 21.002(14)(A) (Vernon 2006) (same). As the members of the committee are appointed and serve a six-year term as specified by statute, we must determine whether the committee satisfies the requirements in section 572.002(10)(A) and is a "state agency" under chapter 572. *See* TEX. GOV'T CODE ANN. § 572.002(1)(C) (Vernon Supp. 2007); *see also id.* § 403.1042(e) (establishing six-year term for committee members).

## B.   State Agency

The three elements of the definition of "state agency" are joined by the word "and." The term is usually used in a conjunctive sense and here we find no indication its use is intended to be otherwise. *See Bd. of Ins. Comms'rs of Tex. v. Guardian Life Ins. Co. of Tex.*, 180 S.W.2d 906, 908 (Tex. 1944) (describing the word "and" as a conjunctive term and one not ordinarily interchangeable with the word "or"). Under this definition, therefore, unless an entity satisfies all three elements listed in section 572.002(10)(A), it is not a "state agency." The committee was clearly created by Texas statute. *See* TEX. GOV'T CODE ANN. § 403.1042 (Vernon Supp. 2007). And due to its placement in the Government Code and its operation under the Comptroller, it is likely a court would consider it to be part of the executive branch of state government. Accordingly, we will focus on the second element of section 572.002(10)(A) and determine whether the committee has "authority that is not limited to a geographical portion of the state." *Id.* § 572.002(10)(A)(ii).

An entity that functions in an advisory capacity only does not have "authority" and does not satisfy the second element. *See* Op. Tex. Ethics Comm'n No. 243 (1995) ("If an executive branch entity functions in an advisory capacity only and is not authorized to exercise actual governmental authority, it is not a state agency for purposes of chapter 572."); *see also* Op. Tex. Ethics Comm'n

No. 369 (1997). Section 403.1042 provides the committee with mere advisory tasks. *See* TEX. GOV'T CODE ANN. § 403.1042 (Vernon Supp. 2007); *see also id.* § 403.1041(b) (Vernon 2005) (authorizing the Comptroller to administer and manage the assets of the account "[w]ith the advice of and in consultation with the advisory committee"), 403.1041(c) ("In managing the assets of the account, the comptroller, with the advice of and in consultation with the advisory committee . . . ."), 403.1041(e) ("The comptroller, with the advice of and in consultation with the advisory committee, may use the earnings" as specified). As noted earlier, section 403.1042 expressly states, with a specified exception, that the committee "serves in an advisory capacity only." *Id.* § 403.1042(a) (Vernon Supp. 2007). Thus, but for the specified exception, it is clear the Legislature intended the committee to serve in only an advisory capacity. We must therefore examine the power provided by the exception to determine whether it constitutes "authority" under the second element of section 572.002(10)(A).

The exception involves the adoption of rules. *See infra* at p. 3. The Comptroller is authorized to adopt rules related to the Comptroller's duties with respect to the Trust Account. *See* TEX. GOV'T CODE ANN. § 403.1041(h) (Vernon 2005). As it is primarily advisory in nature, the committee has no independent authority to adopt rules. *See generally id.* § 403.1042 (Vernon Supp. 2007). The committee has power only to approve or disapprove the Comptroller's proposed rules that relate to the Trust Account. And any proposed rule of the Comptroller is itself confined to the Comptroller's limited authority over the Trust Account.

We find no judicial or attorney general opinion that provides direct precedent helpful to your inquiry. The Commission, however, has issued an opinion that offers us some guidance. *See* Op. Tex. Ethics Comm'n No. 369 (1997). The Commission, in Ethics Advisory Opinion 369, considered the nature of the Agriculture Resources Protection Authority ("ARPA"). *See id.* The ARPA served as a "'coordinating body' for six state agencies' policies and programs regulating pesticides." *Id.* Relevant here, the ARPA had authority to "adopt rules relating to its duties." *Id.* In the opinion, the Commission noted that the Texas Department of Agriculture, which provided administrative support for the ARPA, argued that the ARPA acted in only an advisory capacity. *See id.* The Commission agreed stating that "[a]lthough the ARPA has rule-making authority, it may adopt rules only relating to its duties, all of which are advisory." *Id.* Under Ethics Advisory Opinion 369, an entity with actual power to adopt rules does not exercise authority under section 572.002(10) so long as the rules are statutorily limited to an advisory role.

The committee's power with respect to rules is no greater than the power of the entity considered by Ethics Advisory Opinion 369. The committee's power to approve or withhold approval of a proposed rule of the Comptroller provides the committee some ability to influence the rules adopted regarding the Trust Account. Yet, its power to influence rules does not equate to an affirmative grant of power to adopt rules. *See* TEX. GOV'T CODE ANN. § 403.1041(h) (Vernon 2005). *Cf.* Op. Tex. Ethics Comm'n No. 369 (1997). And any power of the committee to approve or withhold approval of a Comptroller rule is nonetheless confined by the committee's limited advisory role. *See* TEX. GOV'T CODE ANN. §§ 403.1041–.1042 (Vernon 2005 & Supp. 2007) (providing committee with only advisory duties). *Cf.* Op. Tex. Ethics Comm'n No. 369 (1997). We believe the committee's primary role as set out in the statute is to advise the Comptroller, and that

its power to influence a Comptroller-proposed rule is de minimus when compared to its primary function of advising the Comptroller. *See generally* Tex. Att'y Gen. Op. No. JM-141 (1984) (examining Texas Sesquicentennial Commission's executive power as compared to its advisory and ceremonial duties and determining the executive power was, comparatively, de minimus). Accordingly, we believe the committee's role in influencing rules is merely an extension of its advisory power vis-à-vis the Trust Account. We therefore conclude that the committee acts in an advisory capacity only. Absent authority, the committee does not fall within the definition of a state agency under section 572.002(10).

## IV.     Conclusion

Because the committee is not a state agency under section 572.002(10), a member of the committee is not an officer of a state agency who is appointed for a term of office specified by the Texas Constitution or a statute of this state. Therefore, a member of the committee is not a state officer under chapter 572 and not subject to section 572.021's financial statement requirement.

### S U M M A R Y

Chapter 572, Texas Government Code, relating to the filing of financial statements, is not applicable to the board members of the Tobacco Settlement Permanent Trust Account Investment Advisory Committee.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee