OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

May 3, 2002

The Honorable Rick Perry, Governor
State of Texas
Office of the Governor
P. O. Box 12428
Austin, Texas 78711

Opinion No. JC-0498

Re: Interpretation of Texas Government Code
section 441.201 concerning the official records of
a former governor (RQ-0468-JC)

Ms. Peggy D. Rudd
Director and Librarian
Texas State Library and Archives Commission
P. O. Box 12927
Austin, Texas 78711

Dear Governor Perry and Ms. Rudd:

You have each asked this office several questions concerning the interpretation of section 441.201 of the Government Code, enacted by the Seventy-fifth Texas Legislature in 1997 as part of House Bill 1812.[1] *See* Act of May 24, 1997, 75th Leg., R.S., ch. 873, § 1, sec. 441.201, 1997 Tex. Gen. Laws 2792, 2799-2800. Given that your questions relate to the same statute and the same controversy, we consider them together.

Section 441.201 of the Government Code reads:

> In consultation with the [State Library and Archives Commission,] a governor may designate an institution of higher education or alternate archival institution in the state, in lieu of the Texas State Library and Archives, as the repository for the records of the executive office of the governor created or received during that governor's term of office. Such alternative repository shall administer the records in accordance with normally accepted archival principles and practices and shall ensure that the records are available to the public. The terms of any such alternative repository

---

[1] *See* Letter from Peggy D. Rudd, Director and Librarian, Texas State Library and Archives Commission, to Honorable John Cornyn, Texas Attorney General (Nov. 19, 2001) (on file with Opinion Committee) [hereinafter Rudd Letter]; Letter from Honorable Rick Perry, Governor of Texas, to Honorable John Cornyn, Texas Attorney General (Nov. 27, 2001) (on file with Opinion Committee) [hereinafter Perry Letter].

> arrangement shall be recorded by the commission through a memorandum of understanding, deposit agreement, or other appropriate documentation.

TEX. GOV'T CODE ANN. § 441.201 (Vernon 1998).

Pursuant to section 441.201, then-governor George W. Bush in December 2000 signed a Designation Agreement naming the George Bush Presidential Library, a federal facility under the authority of the National Archives, as the alternative repository for his gubernatorial records. *See* Rudd Letter, *supra* note 1, at 1; Perry Letter, *supra* note 1, at 1. A series of questions has arisen with respect to this designation. In particular, these questions concern ownership of the records, the applicability of the Texas Public Information Act to these records, and the role of the Texas State Library and Archives Commission (the "Commission") in the designation process. As we understand it, the Office of the Governor takes the view that the Commission need not be a party to the Designation Agreement and that the agreement need not "incorporat[e] all the specific requirements of the Texas Public Information Act." Perry Letter, *supra* note 1, at 2. It is also our understanding that the Commission believes that its participation in the agreement is necessary and that the Texas Public Information Act continues to apply to these records. We conclude that the records in question are the property of the State of Texas, that the records are subject to the provisions of the Texas Public Information Act and that the Commission is a necessary party to the "memorandum of understanding, deposit agreement, or other appropriate documentation." TEX. GOV'T CODE ANN. §§ 441.191(a), .201 (Vernon 1998).

The language of Government Code section 441.201 was enacted twice by the Seventy-fifth Texas Legislature, standing alone as Senate Bill 1702 and as a part of House Bill 1812.[2] House Bill 1812, in the words of the bill analysis, "consolidates, clarifies, and modernizes statutes relating to the management of state records and the preservation of archival state records and other historical resources." SENATE RESEARCH CTR., BILL ANALYSIS, Tex. H.B. 1812, 75th Leg., R.S. (1997). To that end it adds subchapter L to chapter 441 of the Government Code.

Chapter 441, subchapter L of the Government Code governs the custody and preservation of state records and establishes the role and duties of the Commission with regard to the preservation and management of such records. A state record is defined in subchapter L as:

> any written, photographic, machine-readable, or other recorded information created or received by or on behalf of a state agency or an elected state official that documents activities in the conduct of state business or use of public resources.

---

[2]*See* Act of May 21, 1997, 75th Leg., R.S., ch. 704, 1997 Tex. Gen. Laws 2350 (Senate Bill 1702); Act of May 24, 1997, 75th Leg., R.S., ch. 873, § 1, sec. 441.201, 1997 Tex. Gen. Laws 2792, 2799-2800 (House Bill 1812).

TEX. GOV'T CODE ANN. § 441.180(11) (Vernon 1998). As the governor is an elected state official, *see* TEX. CONST. art. 4, § 1, state records include gubernatorial records. It is the task of the Commission to *"take custody of, preserve, and make available for public use state records* and other historical resources that document the history and culture of Texas as a province, colony, republic, or state." TEX. GOV'T CODE ANN. § 441.006(a)(8) (Vernon Supp. 2002) (emphasis added). Section 441.191(a) provides that "[a] state record may not be sold or donated, loaned, transferred, or otherwise passed out of the custody of the state by a state agency without the consent of the director and librarian [of the State Library and Archives]." *Id.* § 441.191(a) (Vernon 1998). A governor is a "state agency" for purposes of subchapter L. *See id.* § 441.180(9)(A) ("'State agency' means . . . any department, commission, board, office, or other agency in the executive, legislative, or judicial branch of state government created by the constitution or a statute of this state, including an eleemosynary institution."). "The director and librarian is the executive and administrative officer of the commission and shall discharge the administrative and executive functions of the commission." *Id.* § 441.002(b).

Section 441.201, which is a part of subchapter L, provides that a governor "[i]n consultation with the [Texas State Library and Archives Commission]" may designate an alternative repository in the state for his gubernatorial records. *Id.* § 441.201. That repository is an alternative to the State Library and Archives itself. *See id.* The terms of the agreement with the alternative repository "shall be recorded by the commission through a memorandum of understanding, deposit agreement, or other appropriate documentation." *Id.*

We note at the outset that it is clear that these records, which were created or received by or on behalf of an elected state official and document activities in the conduct of state business or use of public resources, *see id.* § 441.180(11) (defining "state record"), are the property of the State of Texas. Nothing in the language of section 441.201 transfers title of the documents from the State of Texas to the alternative repository. *See Fitzgerald v. Advanced Spine Fixation Sys. Inc.,* 996 S.W.2d 864, 865 (Tex. 1999) (statute to be construed according to plain and common meaning of statutory words). Nor can such transfer be implied. *See Massachusetts v. United N. & S. Dev. Co.,* 168 S.W.2d 226, 229 (Tex. 1942) (interpretation of statute by implication permitted only to supply obvious intent not expressly stated); *see also Fitzgerald,* 996 S.W.2d at 867 (words may be added only in extraordinary situations to effect clear legislative intent).

Based on our reading of the statute as a whole, as well as its legislative history, we conclude that no transfer of title was intended. *See Jones v. Fowler,* 969 S.W.2d 429, 432 (Tex. 1998); *see also Citizens Bank v. First State Bank,* 580 S.W.2d 344, 348 (Tex. 1979) (legislative intent determined from general view of enactment). House Bill 1812 and Senate Bill 1702 were both discussed before the House Committee on State, Federal, and International Relations in a public hearing on April 22, 1997.[3] The question of title to the records was addressed on that occasion.

---

[3] *Hearings on Tex. H.B. 1812 Before the House Comm. on State, Fed. & Int'l Relations,* 75th Leg., R.S. (Apr. 22, 1997) (tape available at House Video/Audio Department); *Hearings on Tex. S.B. 1702 Before the House Comm. on*
(continued...)

Testifying as a resource witness, Mr. Robert Martin, who was at that time the state librarian, responded to a question as to the state's ownership as follows:

> There's no transfer of title involved. . . . There's a difference. It's important to distinguish between ownership and physical custody and assurances of control, disposition, and access. What we are interested in is considerably less physical custody and much more interested in assurances of access and disposition.

*Hearings on Tex. S.B. 1702, supra* note 3. Representative Bob Hunter, the author of House Bill 1812 and the sponsor of Senate Bill 1702, echoing Mr. Martin said:

> [T]he custody is one thing, *the ownership by the state of course is always there.*

*Id.* (emphasis added). These records, therefore, remain the property of the State of Texas, and retain their characteristics as Texas state records.

In light of our conclusion that the records remain the property of Texas, we consider whether, given that the George Bush Presidential Library is a federal facility, the terms of availability for the records are determined by the Federal Freedom of Information Act or the Texas Public Information Act. In our view, these records of the State of Texas remain subject to the Texas Public Information Act.

Section 552.002(a)(1) of the Government Code specifically defines "public information" as "information . . . collected, assembled, or maintained . . . in connection with the transaction of official business . . . by a governmental body." TEX. GOV'T CODE ANN. § 552.002(a)(1) (Vernon 1994 & Supp. 2002). "Governmental body" is defined by the Public Information Act as, *inter alia*:

> a board, commission, department, committee, institution, agency, or office that is within or is created by the executive or legislative branch of state government and that is directed by one or more elected or appointed members.

*Id.* § 552.003(1)(A)(i) (Vernon Supp. 2002). "Records received or created by the governor's office in carrying out its statutory duties are subject to the Open Records [now Public Information] Act and may be withheld from the public only if one of the act's specific exceptions protects them." Tex. Att'y Gen. Op. No. JM-1013 (1989) at 3.

---

[3](...continued)
*State, Fed. & Int'l Relations*, 75th Leg., R.S. (Apr. 22, 1997) (tape available at House Video/Audio Department).

Section 441.201 does not expressly remove a former governor's records from the ambit of the Texas Public Information Act. *See* TEX. GOV'T CODE ANN. § 441.201 (Vernon 1998); *Fitzgerald*, 996 S.W.2d at 867 (words may be added only when necessary to give effect to clear legislative intent). Further, exceptions to the Texas Public Information Act must be expressly provided. *See, e.g.,* Tex. Att'y Gen. ORD-644 (1996), ORD-478 (1987) (statute must expressly make information confidential in order for information to be excepted under Public Information Act). Given that section 441.201 requires that the records be "available to the public," *see* TEX. GOV'T CODE ANN. § 441.201 (Vernon 1998), and that the ordinary standard for what constitutes the "availability" of Texas public records such as these is that of the Texas Public Information Act, we conclude that the public availability mandated in section 441.201 is governed by the Texas Public Information Act, chapter 552 of the Government Code. The director and librarian of the Commission, which retains constructive custody of the records on behalf of the state, *see id.* §§ 441.006(a)(8), .193 (Vernon 1998 & Supp. 2002), is the public information officer with respect to them for purposes of the Texas Public Information Act. *See* Tex. Att'y Gen. ORD-674 (2001) (duty and authority under Public Information Act of director and librarian with respect to archival state records). As a general matter, information in such records that was confidential under the Texas Public Information Act when they were in the custody of the governor's office remains so, and the director and librarian is charged with the responsibility of maintaining that confidentiality. *See id.*

As to the third major question with which you are both concerned, it has been suggested that the role of the Commission under section 441.201 is simply a ministerial one of recording an agreement between the governor and the alternative repository institution.[4] We disagree. While the language of the section read in isolation might be susceptible of such an interpretation, when read in light of the other provisions in subchapter L, as well as its legislative history, section 441.201 clearly requires a more active role for the Commission as a party to the memorandum of understanding or other documentation. *See Fowler*, 969 S.W.2d at 432 (statutory provision in question to be considered in context of entire act); *see also Citizens Bank*, 580 S.W.2d at 348; TEX. GOV'T CODE ANN. §§ 311.021(2) (Vernon 1998) (presumption that entire statute is intended to be effective); .023(3) (legislative history may be considered); .025(b) (amendments to same statute in same legislative session to be harmonized if possible).

We conclude that the Commission, which is the ordinary keeper of such state records, *see* TEX. GOV'T CODE ANN. § 441.006(8) (Vernon Supp. 2002), is a necessary party to the memorandum of understanding or other necessary documents contemplated by the statute to ensure that the records at issue are properly archived and available to the public. The statutory language gives the governor, "[i]n consultation with" the Commission, only the power to designate—that is, to name—the alternative repository. *See id.* § 441.201 (Vernon 1998). The duty to administer the records is given to the repository, and the arrangement is to be recorded by the Commission. *See id.*

---

[4]*See* Letter Brief from James C. Todd, Office of Attorney General, on Behalf of the Office of Governor, to Susan Denmon Gusky, Chair, Opinion Committee, Office of Attorney General, at 3 (Jan. 11, 2002) [hereinafter Letter Brief].

A reading of section 441.201 in which the Commission does not participate in the memorandum of understanding creates an irreconcilable conflict between that section and section 441.191 of the Government Code, which prohibits the transfer of state records without the consent of the director and librarian. *See id.* § 441.191(a). A brief submitted on behalf of the Office of the Governor recognizes this point by arguing that "section 441.201 . . . overrides [section] 441.191." Letter Brief, *supra* note 4, at 5.

Both sections 311.021(2) and 311.025(b) of the Government Code, which express established principles of statutory construction, require us to harmonize sections 441.191 and 441.201 if possible. *See* TEX. GOV'T CODE ANN. §§ 311.021(2) (entire statute presumed effective); .025(b) (amendments to same statute in same legislative session to be harmonized if possible) (Vernon 1998). We believe it is in fact possible to do so. In giving the governor the power to designate an alternative repository so long as that repository meets the statutory conditions, section 441.201 limits the authority generally given the director and librarian in section 441.191 to prevent the transfer of state records. However, the alternative repository must be capable of "administer[ing] the records in accordance with normally accepted archival principles and practices" and "ensur[ing] that the records are available to the public." *Id.* § 441.201. The agency of the State of Texas with the expertise to decide whether the alternative repository possesses those qualifications is the Commission, the ordinary caretaker of state records, *see id.* § 441.006(a)(8) (Vernon Supp. 2002); moreover, the Commission, unlike the federal facility at issue in the instant case, is acquainted with and can assure compliance with the requirements of the Texas Public Information Act. Reading section 441.201 to require that the memorandum of understanding or other appropriate documentation include the participation of the Commission insures that the necessary arrangements will be made with the oversight of the body otherwise entrusted by the legislature with the care of such records as these.

Moreover, the legislative history of section 441.201 presents clear evidence that the role of the Commission is not merely a passive one. In addressing the concerns expressed by certain witnesses with respect to the archiving and availability of these records before the House Committee on State, Federal and International Relations, Representative Hunter said:

> But the important thing is that *the State Library and Archives Commission will have the control and will have the administering of these agreements,* and every agreement will be not only a memorandum of understanding, but there will be a deposit agreement and other appropriate documentation, and I have full confidence in the State Library and Archives system for accomplishing this.

*Hearings on Tex. S.B. 1702, supra* note 3 (emphasis added).

Based, therefore, both upon our reading of section 441.201 in the context of House Bill 1812 as a whole and the evidence of the sponsor's remarks in the legislative hearing, we conclude that the Commission is a necessary party to the memorandum of understanding or other appropriate

documentation contemplated by the statute to ensure that the records at issue are properly archived and available to the public.

In short, we read section 441.201 as a limited exception to the general scheme of preservation of state records set out in subchapter L of chapter 441 of the Government Code, giving a governor the power to designate an alternative repository for his gubernatorial records, but according him no other authority to alter the manner in which such records are preserved or made available to the public. The statute conditions that authority on the ability of the alternative repository to meet the stated terms regarding normally accepted archival principles and practices and public accessibility, and it is the duty of the Commission, as the body ordinarily concerned with the archiving of state records, to determine that those conditions are met. The choice of repository, so long as the statutory conditions are met, belongs entirely to the governor whose records are at issue.

As to the other questions you have asked, we will respond briefly. Governor Perry has asked the extent of his responsibility with regard to information contained in the records that are at issue here. *See* Perry Letter, *supra* note 1, at 2. The responsibility of the current governor's office is to respond to requests for information in its possession or to which it has a right of access. *See* TEX. GOV'T CODE ANN. § 522.002 (Vernon 1994 & Supp. 2002). If copies of any of the records at issue remain in the possession of the governor's office, it must treat them as it would any other requested public information. But the governor's office need not respond to requests for records of which it does not have possession or to which it does not have access. *See id.*

Ms. Rudd asks: "Does the term 'executive office of the governor' used in the statute mean something other than all the records of the Governor's Office, including such offices as the Office of Budget and Planning, Office of Criminal Justice, Committee on People with Disabilities, etc.?" Rudd Letter, *supra* note 1, at 2. Section 441.201 applies to "the records of the executive office of the governor created or received during that governor's term of office." TEX. GOV'T CODE ANN. § 441.201 (Vernon 1998). The phrase "executive office of the governor" is not defined in the statute, nor has our research in the legislative history afforded us any definition of it. *See id.* § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); (b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). Accordingly, we must look elsewhere to determine its meaning.

We take it, first, that the legislature is not referring to the Office of the Governor as an entity in the Executive Department, because such reference would be superfluous. *See* TEX. CONST. art. 4, § 1 (officers constituting Executive Department include "Governor, who shall be the Chief Executive Officer of the State"); TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1998) (presumption that entire statute meant to be effective). The *Oxford English Dictionary* defines "executive," *inter alia*, as "[p]ertaining to execution; having the function of executing or carrying into practical effect." V OXFORD ENGLISH DICTIONARY 522 (2d ed. 1989). In interpreting a provision of the 1993 General Appropriations Act that permitted the purchase of director's or officer's liability insurance for "executive management staff" of state agencies, this office in Attorney General Opinion DM-346

examined cases dealing with the phrase "executive officer" and noted such characteristics as authority, control of employees, and ability to help shape policy. *See* Tex. Att'y Gen. Op. No. DM-346 (1995). Further, the legislature, in the General Appropriations Act, routinely distinguishes between the Office of the Governor and trusteed programs within that office—essentially grant-making bodies.[5] In light of the dictionary definition, the criteria discussed in Attorney General Opinion DM-346, and the General Appropriations Act distinction, we think that records of the executive office are records concerning the shaping of policy and the execution of the law by the governor and his staff, rather than, *e.g.*, records kept by the governor as essentially a trustee of grant funds. What records are so identified with the workings of the governor's office as to be within the meaning of the phrase "executive office of the governor" in any particular instance is, however, a question of fact.

Finally, Ms. Rudd asks whether inspection of these records by either the National Archives or a representative of the former governor "waive any right to an exception from disclosure under the Texas Public Information Act." Rudd Letter, *supra* note 1, at 2. Given that Government Code section 441.201 requires the alternative repository to administer the records and that the National Archives is responsible for the alternative repository, it would appear that the legislature has in this section given a statutory right of access to the alternative repository, and in this case to the National Archives, because absent a right to review the records, the repository could not perform its duty to administer them. Accordingly, given this statutory right of access, a review by the National Archives would not constitute a public disclosure under the Texas Public Information Act. *See, e.g.,* Tex. Att'y Gen. ORD-607 (1992), ORD-598 (1991), ORD-501 (1988), ORD-500 (1988), ORD-478 (1987), ORD-451 (1986). Whether a disclosure to any particular individual would constitute a waiver to any exception under the Act, however, is a question requiring factual determinations of a sort this office does not make in the opinion process.

---

[5]*See* General Appropriations Act, 77th Leg., R.S., ch. 1515, 2001 Tex. Gen. Laws 5411, 5479-83; General Appropriations Act, 76th Leg., R.S., ch. 1589, 1999 Tex. Gen. Laws 5446, 5513-18; General Appropriations Act, 75th Leg., R.S., ch. 1452, 1997 Tex. Gen. Laws 5535, 5596-600.

## S U M M A R Y

Section 441.201 of the Government Code permits a governor in consultation with the Texas State Library and Archives Commission to designate an alternative repository in the state for his gubernatorial records. The records remain the property of the State of Texas, and remain subject to the Texas Public Information Act. The terms of an alternative depository arrangement must be memorialized in a memorandum of understanding or other appropriate documentation to which the Texas State Library and Archives Commission is a necessary party.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General, Opinion Committee