# IN THE SUPREME COURT OF TEXAS

═══════════
No. 12-0804
═══════════

GARY WAYNE JASTER, PETITIONER,

v.

COMET II CONSTRUCTION, INC., JOE H. SCHNEIDER,
LAURA H. SCHNEIDER, AND AUSTIN DESIGN GROUP, RESPONDENTS

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

CHIEF JUSTICE HECHT, joined by JUSTICE GREEN and JUSTICE GUZMAN, and in all but Part II by JUSTICE BROWN, dissenting.

In this case and another decided today, *In re Ford*,[1] the Court has written more on the subject of who is a "plaintiff" than I imagine all the other courts in the English-speaking world have ever written, all together. The distinction is a dubious one.

The cases are quite different, of course — the issue in this case is who *the* plaintiff is, while in *Ford* the issue is who *a* plaintiff is, and although both cases involve statutes in the Texas Civil Practice and Remedies Code,[2] the statutes are in separate volumes. So it is hardly surprising that the cases reach different, and arguably contradictory, outcomes. Without trying to put too fine a point

---

[1] ___ S.W.3d ___ (Tex. 2014).

[2] Unless otherwise indicated, all statutory references are to the Texas Civil Practice and Remedies Code.

on it, the Court holds in this case that a third-party plaintiff cannot be *the* plaintiff in any action, and is of two minds about whether an intervenor can be *the* plaintiff, while in *Ford* the Court holds that *both* a third-party plaintiff *and* an intervenor can be *a* plaintiff, so long as they are not also defendants. Not to complicate matters, the author of the Court's opinion in *Ford* agrees that this case is correctly decided, but the author of the Court's opinion in this case dissents in *Ford*. And another dissenter in *Ford* joins the opinion in this case — but that begins to complicate matters.

I suspect that these cases will leave many readers scratching their heads. Though the Court is trying to adhere to the statutory text, whatever the result, it opens itself to the criticism that its analysis is picky and detached from reality. Intending to be careful, the Court risks being viewed as conducting a contest among the Pharisees in the Temple of Textualism over who is the most devout.

Faithfulness to the principle that the words of a statute are the law may necessitate embracing a result that is peculiar or worse, yet unavoidable. But *unnecessarily* embracing such a result undermines the principle by suggesting that more and less reasonable interpretations are to be treated equally. The Judiciary's sole objective in interpreting statutes is to give effect to the Legislature's intent expressed in its words. Out of respect for the Legislative Branch, we must read their words the way they have written them — to make sense. I am not confident we have achieved that result in this case and therefore respectfully dissent.

**I**

By statute, "the plaintiff" in "any action or arbitration proceeding" for malpractice by certain professionals must ordinarily file "with the complaint" an affidavit supporting each theory of

recovery.[3]  All we have to decide is whether this requirement applies when a professional is sued by

a third-party plaintiff — a defendant suing a non-party.[4]  One might think this would be pretty easy:

a third-party *plaintiff* is, in name itself, a plaintiff, and a suit is an action, so yes, the requirement

applies.  But the reader will by now have seen from the plurality and concurring opinions that the

issue is far more complicated than that.

The answer, according to the plurality opinion, depends on the "plain", "common", and

"ordinary" meaning of the statute's operative words, "the plaintiff" and "any action".[5]  The plurality

---

[3] TEX. CIV. PRAC. & REM. CODE § 150.002(a) ("In any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor who: (1) is competent to testify; (2) holds the same professional license or registration as the defendant; and (3) is knowledgeable in the area of practice of the defendant and offers testimony based on the person's: (A) knowledge; (B) skill; (C) experience; (D) education; (E) training; and (F) practice."); § 150.002(b) ("The affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim."); § 150.002(c) ("The contemporaneous filing requirement of Subsection (a) shall not apply to any case in which the period of limitation will expire within 10 days of the date of filing and, because of such time constraints, the plaintiff has alleged that an affidavit of a third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor could not be prepared.  In such cases, the plaintiff shall have 30 days after the filing of the complaint to supplement the pleadings with the affidavit.  The trial court may, on motion, after hearing and for good cause, extend such time as it shall determine justice requires."); § 150.001(1-a) ("'Licensed or registered professional' means a licensed architect, licensed professional engineer, registered professional land surveyor, registered landscape architect, or any firm in which such licensed or registered professional practices, including but not limited to a corporation, professional corporation, limited liability corporation, partnership, limited liability partnership, sole proprietorship, joint venture, or any other business entity.").

[4] TEX. R. CIV. P. 38(a) ("At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a citation and petition to be served upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him.  The third-party plaintiff need not obtain leave to make the service if he files the third-party petition not later than thirty (30) days after he serves his original answer. Otherwise, he must obtain leave on motion upon notice to all parties to the action.").

[5] *Ante* at ___ ("We limit our analysis to the words of the statute and apply the plain meaning of those words 'unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.'"; *id.* at ___ ("Chapter 150 does not define the terms 'plaintiff' or 'action,' so we must give them their common, ordinary meaning unless the statute clearly indicates a different result.").

3

opinion then embarks on what is the most exhaustive treatment of that subject in the law of Texas, if not all of American jurisprudence.  It is masterful.  I would not challenge a word, and there is certainly nothing left to add.  All I can do of any use is to summarize the plurality opinion's analysis and then offer a few reflections.

*According to the plurality opinion*:

The word "action" is sometimes used "more broadly" to refer to a "cause of action", but an "action" is really an entire lawsuit, and a "cause of action" is only a "right to relief", or at least a "claim" to such a right.[6]  A person with a "cause of action" can bring an "action", which is "generally synonymous with 'suit'", except that "the word 'suit' can be 'more general in its comprehension than the word "action"'".[7]  Historically, an "action" was a legal proceeding and a "suit" was an equitable one.[8]  The important thing is that both an "action" and a "suit" are "proceedings", though actually, all three words, while different, have been used interchangeably, along with "case", "lawsuit", and "cause".[9]  An "action" is a "cause", but it is not a "cause of action".  That is, except for one time in Rule 85 of the Texas Rules of Civil Procedure.[10]

---

[6] *Ante* at ___.

[7] *Ante* at ___.

[8] *Ante* at ___.

[9] *Ante* at ___.

[10] *Ante* at ___ n.11; *see* TEX. R. CIV. P. 85 ("The original answer . . . may present a cross-action . . . .").

4

*Furthermore*:

Dictionaries define "plaintiff" as the person who initiates an "action" or "suit".[11] Third-party plaintiffs and cross-claimants "share some similarities" with "plaintiffs", and the law treats them similarly "in limited respects". For example, third-party plaintiffs and cross-claimants initiate proceedings against third-party defendants and cross-defendants, and they are plaintiffs for res judicata purposes.[12] But third-party plaintiffs and cross-claimants are not "plaintiffs" in an "action" because they initiated only part of the suit, not the whole suit.[13] There must be "a direct relationship between the words 'plaintiff' and 'action.'"[14] All "plaintiffs" are "claimants", but not all "claimants" are "plaintiffs", and "[t]hroughout the Civil Practices and Remedies Code," that is the way those words are defined and used. When the Legislature says "plaintiff", it means the person initiating suit, and when it says "claimant", it means "plaintiffs" and others who assert "causes of action".[15] Actually, that is not quite right. Chapter 74 uses the terms "plaintiff" and "claimant" interchangeably in the very same sentence.[16] Also, some "plaintiffs" do not initiate suit but intervene or are

---

[11] *Ante* at ___.

[12] *Ante* at ___.

[13] *Ante* at ___.

[14] *Ante* at ___.

[15] *Ante* at ___.

[16] *Ante* at ___ & n.14; *see* TEX. CIV. PRAC. & REM. CODE § 74.351(c) ("If the claimant does not receive notice of the court's ruling granting the extension [to file an expert report] until after the 120-day deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.").

involuntarily joined, but by being included among the "plaintiffs" who do initiate suit, they become "plaintiffs", though maybe not under the statute in this case, a question we need not decide.[17]

*Conclusion*: Third-party plaintiffs are not plaintiffs.

To the plurality opinion's splendid analysis and conclusion, I respectfully offer five reservations.

*First*: The plurality opinion has proven beyond any doubt that sometimes third-party plaintiffs are plaintiffs and sometimes not, sometimes third-party actions are actions and sometimes not, and while sometimes the variations can be explained, sometimes they cannot be. Any remaining doubt is quickly dispelled by searching caselaw and statutes for the terms "third-party plaintiff", "third-party action", and "third-party cause of action", and noting the various, inconsistent ways in which those terms are used. When a word is used sometimes to mean one thing and sometimes another, neither is "plain", "common", or "ordinary" to the exclusion of the other. Ironically, the plurality opinion's labors to prescribe definite meanings for "plaintiff" and "action" only demonstrate that for it, the words "plain", "common", and "ordinary" have no real meaning at all.

*Second*: The underlying assumption of the plurality opinion's approach is that when it finally arrives at the real meaning of the inescapably imprecise words, "plaintiff" and "action", trudging through dictionaries, cases, and statutes, parsing and explaining, and finally discarding what it considers to be misuses of the words, the end result will be what the Legislature intended without going through the same process. When lawyers and judges have put words to various, inconsistent

---

[17] *Ante* at ___ n.15.

uses over time, legislators simply cannot be presumed, alone of all creatures, to be precise — or closer to the point, to have been more precise in one statute than they were in others. And in Chapter 150, they, in fact, were not precise at all.

For example, a "complaint", with which a certificate must be filed, is not part of Texas civil procedure. Obviously, a "petition" is intended. Would the Court hold that Chapter 150 is dead letter because it applies only to the filing of a "complaint", which is certainly not a "petition"? Heavens, no, the plurality opinion says. That would be absurd.[18]

For another example, a certificate must be filed by "the plaintiff" in an "arbitration proceeding", but in an arbitration proceeding, the person seeking relief is uniformly referred to as a "claimant", not as a "plaintiff".[19] Does this mean that certificates of merit need never be filed in arbitration proceedings? I suppose the Court would think that absurd, too.

Yet if there is any justification for interpreting "action" strictly, "plaintiff" somewhat strictly, and "complaint" loosely, all three words in the same sentence, it is not apparent. More importantly, the process of interpreting statutes cannot legitimately ascribe a precision to them that the process of writing them gave no indication, and probably was incapable, of producing. At least, it cannot

---

[18] *Ante* at ___ n.17.

[19] *See Rules and Procedures*, AMERICAN ARBITRATION ASSOCIATION, https://www.adr.org/aaa/faces/rules (last visited July 1, 2014) (no reference in rules to "plaintiff"); *Code of Arbitration Procedure*, FINANCIAL INDUSTRY REGULATORY AUTHORITY, http://www.finra.org/ArbitrationAndMediation/Arbitration/Rules/Codeof ArbitrationProcedure/ (last visited July 1, 2014); Rules of the Judicial Arbitration and Mediation Services, available at *ADR Clauses, Rules, and Procedures*, JAMS, http://www.jamsadr.com/rules-clauses/ (last visited July 1, 2014); *Arbitration Rules*, WORLD INTELLECTUAL PROPERTY ORGANIZATION, http://www.wipo.int/amc/en/arbitration/rules/ newrules.html (last visited July 1, 2014); *ICC Rules of Arbitration*, INTERNATIONAL CHAMBER OF COMMERCE, http:// www.iccwbo.org/products-and-services/arbitration-and-adr/arbitration/icc-rules-of-arbitration (last visited July 1, 2014); *Rules and Procedures*, INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION, https://www.icdr.org/icdr/faces/i_search/i_rule? (the international division of AAA).

do so with the professed purpose of giving effect to the Legislature's intent in the enactment. Judicial interpretation should not imagine a Legislature that does not exist.

*Third*: As the plurality opinion candidly acknowledges, "the terms 'plaintiff' and 'action' may sometimes be used more broadly than their common meanings would support."[20] When the Legislature has used the same words to mean different things from time to time, at least once in the same sentence, how is it possible to determine *from the words alone* what it meant *this time*? In Chapter 74 of the Civil Practice and Remedies Code, the Legislature uses "plaintiff" to mean "claimant", which includes third-party plaintiffs.[21] How can the Court ascertain, from nothing more than the words themselves, that the Legislature did not intend the same meaning in Chapter 150?

*Fourth*: The plurality opinion demonstrates that judicial interpretation of statutes cannot focus on text alone; it must examine the text in context. The plurality and concurring opinions profess agreement that context is important, but by context, both mean only surrounding words, not the reality they are intended to affect. The concurring opinion warns against "a sterile literalism which loses sight of the forest for the trees", but staring at little clumps of trees — losing sight of the forest for the groves — is no more fertile an approach.

The context the Court ignores is the world in which the words it has so carefully examined operate. It has long been the Court's rule that "a statute is to be construed with reference to its manifest object, and if the language is susceptible of two constructions, one of which will carry out

---

[20] *Ante* at ___.

[21] *Supra* note ___.

and the other defeat such manifest object, it should receive the former construction."[22]  But the rule is disregarded in a Rabbinic fixation with individual words.  The plurality opinion's impressive analysis may be correct *in the abstract*.  It may be that "plaintiff" and "action" should always have only the meanings the Court ascribes to them.  But that has never been true — hence, the need for lengthy analysis — and to demand such exactitude in this case impairs the statute's purpose.

The manifest object of Chapter 150 is to require a prima facie showing of liability at the time certain professionals are sued for malpractice.  Remarkably, and tellingly, the Court states that it simply cannot tell what the manifest object of Chapter 150 is because it cannot be sure exactly which professionals are to be protected or precisely from what claims.  An obvious answer, especially when the Legislature has not said otherwise, is: *all*.  The concurring opinion admits that imposing the requirement only on a plaintiff suing a defendant and not on a third-party plaintiff suing a third-party defendant "may be 'quirky'",[23] but the concurring opinion and the plurality opinion conceive two reasons why this was exactly what the Legislature intended.

One is that a third-party plaintiff may be caught off-guard by a lawsuit and not have enough time to procure the required affidavit before the third-party petition must be filed.[24]  But the third-party plaintiff will never have less than 51 days,[25] and that time may be extended by motion or agreement.  It is possible that the Legislature could have considered this time pressure sufficient

[22] *Citizens Bank of Bryan v. First State Bank*, *Hearne*, 580 S.W.2d 344, 348 (Tex. 1979).

[23] *Ante* at ___.

[24] *Ante* at ___.

[25] A defendant sued on Monday has 21 days in which to answer, TEX. R. CIV. P. 15, and 30 more days in which to file a third-party petition as a matter of right, TEX. R. CIV. P. 38.

reason to except an entire group of claims from a requirement intended to protect all professionals, but it is just as likely that the Legislature thought the opposite and did not create the loophole the Court finds today.

Another motive the Court thinks the Legislature might have had for excluding third-party plaintiffs from the statutory requirement is that to include them is "necessarily complicated" because third-party plaintiffs and cross-claimants may be seeking "affirmative rather than derivative relief" or only "contribution and indemnity".[26] But the Court simply presumes that it is "appropriate[]" to tailor the affidavit requirement to each such situation. It is far simpler, and no less appropriate, to treat all claimants the same: a charge of malpractice cannot be made against these professionals without something more than mere allegations to back it up. And the cross-claimant seeking only contribution and indemnity can use a certificate previously filed by a plaintiff.

*Fifth*: Despite every effort, the Court itself cannot plough a straight furrow. Third-party plaintiffs are not covered by the statute, even if the third-party action is severed, so that the third-party plaintiff becomes *the plaintiff* in the severed action and its initiator, just as if the third-party action had been filed separately to begin with. And when parties joined as plaintiffs after the action has been initiated are the first to assert a malpractice claim against a professional, the Court cannot say for sure whether they are plaintiffs or not. It feebly hints that they may be plaintiffs by association, falling prey to the smudging of meanings it is trying to rectify, then declines to answer its own question lest its explanation be advisory.[27]

---

[26] *Ante* at ___.

[27] *Ante* at ___ n.15.

10

## II

And the plough hits a rock in *Ford*. That case involves Section 71.051 regarding *forum non conveniens*. The statute requires dismissal of actions falling under that doctrine, as determined by applying several factors, but excepts cases in which "the plaintiff is a legal resident of this state."[28] The statute also defines "plaintiff" as "a party seeking recovery of damages for personal injury or wrongful death" but expressly excludes third-party plaintiffs.[29]

The problem in the case is this. A nonresident plaintiff sued his deceased brother's estate for injuries suffered in a vehicular accident in Mexico in which the brother, who owned and maintained the vehicle, was killed. The estate, in turn, sued Ford, and then so did the plaintiff. At that point, the case could have been dismissed under Section 71.051. But the decedent's wrongful death beneficiaries, some of whom are residents, intervened, also suing Ford, but not, of course, suing the defendant estate. If the intervenors are plaintiffs, the case cannot be dismissed. But are they third-party plaintiffs, statutorily excluded from "plaintiffs"? No, the Court holds, because in context, the third-party plaintiffs referred to in the statute must also be defendants, and the intervenors are more aligned with the plaintiff than with the defendant.

I join in the Court's opinion in *Ford*, though the Court's detailed analysis of the text and the alignment of the parties is similar to the Court's analysis in the present case, which as I have said, I find misguided. Unquestionably, however, had the intervenors filed their own suit, it could not

---

[28] TEX. CIV. PRAC. & REM. CODE § 71.051(e).

[29] *Id*. § 71.051(h)(2) (counterclaimants and cross-claimants are also excluded).

have been dismissed and could have been consolidated with the original plaintiff's suit, or if that suit had been dismissed, the plaintiff could have intervened in the other suit. Thus, the action involving all the parties and claims can be brought in Texas without being dismissed under Section 71.051. So the question becomes: are the procedural differences in the way the case was brought and the way it could have been brought significant to the ostensible purpose of Section 71.051? The answer is plainly no. Without answering that question, the dissents would dismiss the intervenors' claims because, in this action, they are more aligned with the defendant's. In the dissents' view, the intervenors simply made an error that cost them their case in Texas.

In my view, while it is possible to read the statute as the dissents do, it is at least as reasonable to read it as the Court does, and it is impossible to think the Legislature intended, as between the two, the interpretation that leads to different results for essentially identical parties. And we should not think, as the dissents do, that the Legislature, in trying to preserve a Texas forum for Texas residents, craftily laid a trap so that by suing one way rather than another, they would lose their rights altogether.

In both this case and *Ford*, we must interpret statutory language that, in the circumstances presented, is imprecise. In both cases, the statutory purpose is evident, not something that we must supply. "The evident purpose of what a text seeks to achieve is an essential element of context that gives meaning to words."[30] When that purpose can be determined from the text, as it can easily be in these cases, "[a] textually permissible interpretation that furthers rather than obstructs [a statute's]

---

[30] ANTONIN SCALIA & BRYAN GARNER, READING LAW 20 (2012).

purpose should be favored."[31]

**III**

Finally, I add a brief word in response to the argument that a stricter judicial adherence to text will produce more careful statutory drafting. For one thing, I doubt whether that is true, or even possible. This Court pores over every word, every comma, in its opinions, trying to be as exact as possible, and still disagreements regularly arise — often even among us — about what was really said. The legislative process does not usually allow for the same care to be taken in the choice of language. There are many authors, the text is subject to amendments of all sorts, friendly and unfriendly, and in the end, the product is often one of compromise, which is essential to the legislative process.

More importantly, the Judiciary is not, in my view, entitled to insist that the Legislature write for our approval. Our objective in interpreting statutes is to find *the Legislature's* intent in the words *it* enacted, not what a group of grammarians and researchers might have intended by those words. This does not justify substituting our meaning for the Legislature's, or what we might consider desirable policies for those it has chosen. But proper statutory interpretation does require us to give careful consideration to the reality in which and for which the Legislature acted. For legislators, each statute has a purpose, which is the context in which the words speak. When we can find that purpose without inventing it, and pursue it without adding or detracting from it, it should inform our interpretation.

---

[31] *Id.* at 63.

\* \* \* \* \*

Since the Tower of Babel, expression is inexact.  Joseph Heller has written powerfully of the importance of context:

> "Help!" he shrieked shrilly in a voice strangling in its own emotion, as the policemen carried him to the open doors in the rear of the ambulance and threw him inside. "Police! Help! Police!"  The doors were shut and bolted, and the ambulance raced away.  There was a humorless irony in the ludicrous panic of the man screaming for help to the police while policemen were all around him.  Yossarian smiled wryly at the futile and ridiculous cry for aid, then saw with a start that the words were ambiguous, realized with alarm that they were not perhaps, intended as a call for police but as a heroic warning from the grave by a doomed friend to everyone who was not a policeman with a club and gun and a mob of other policemen with clubs and guns to back him up.  "Help! Police!" the man had cried, and he could have been shouting of danger.[32]

The starting point of textual analysis must be the words chosen, but it cannot be the ending point, lest the exercise be criticized as verbomania.  In my view, the Court in this case rejects a simple, reasonable — and yes, plain — interpretation of a statute in favor of a demanding but inconsistent word analysis that partially impairs the statute's purpose.  The Court narrowly avoids doing the same thing in *Ford*.  We would not interpret our own work this way, and it is no more appropriate because the work is that of another Branch of Government.  I respectfully dissent.

_____
Nathan L. Hecht
Chief Justice

Opinion delivered: July 3, 2014

_____

[32] JOSEPH HELLER, CATCH-22 425 (Dell ed. 1985) (1961).

14